Judge Robertson
delivered the opinion of the Court.
In 1800, Walter Beall mortgaged to Robept Andrews and John Pierce, in trust for Samuel Beall, various tracts of land, town lots, &c. In April, 1801, he mortgaged the same property to John Breckenridge, to secure the payment of £1000. In 1802, he mortgaged it again to John Breckenridge, as security for another liability, and recognized and referred to. the mortgage of 1801. In 1804, he sold one of the mortgaged lots to Peter B. Ormsby, and made him a deed for it, John Breckenridge and Walter Beall, both having previously died, in October, 1811, the representatives of Breckenridge brought a suit in chancery in the Fayette circuit court against N. B. Beall, the administrator, and Samuel Beall the devisee of the decedent, W. Beall, and against the trustees, Andrews. *237 and Pierce, praying a foreclosure of the mortgage of 18ÓL In the progress of the suit, the heirs of the decedant, Beall, were made defendants. The administrator acknowledged service of the suhpmna, and was executed on S. Beall in Fayette. The heirs answered, and there was a publication for eight weeks against the trustees.
Bill filed by oompl’t. and equityreHed
Decree of circuit court
The questions far consideration and revision.
*237 A foreclosure of the equity of redemption and sale of as much of the mortgaged property as might be necessary, were decreed by the court; and among other things, the lot in Bardstown, in the possession of P. B. Ormsby, was sold by the commissioner appointed by the decree, and purchased by P. B. Ormsby himself, for $4030, for which he executed bond, with the said N. B. Beall his security. Having failed to pay the amount of the bond, when due, suit was brought on it, and judgment obtained against him and N. B. Beall, in the Jefferson circuit court. The properly of P. B. Ormsby was sold by execution, to satisfy this judgment, and was purchased by his brother, Stephen Ormsby, on a credit, and who executed his bond therefor. N. B. Beall had filed a bill of review, to correct the decree, and failed; and he and P. B. Ormsby had made a motion, in the same court, to set aside the sale and quash their bond, which also failed.
This suit was instituted in the Jefferson circuit court, by P. B. Ormsby, for the purpose of enjoining the paymentof his bond, by Stephen Ormsby; and the bill relies principally on these grounds. First. That ter Beall was in a state of lunacy in 1801, when he executed the deed of mortgage to Breckenridge. Second. That the decree is inoperative and void, for want of jurisdiction in the Fayette court, the defendants and all the mortgaged property, (as alleged) being in other counties, and for want of proper parties. Third. That P. B. Ormsby did not know when he made the purchase of the lot; that he could prevent the sale, or avoid the decree.
The circuit court of Jefferson granted the injunction, and by its final decree, made it perpetual. And this appeal is prosecuted to reverse this decree.
The main questions which the assignment of errors presents for consideration, are: First, Whether *238 mitling the alleged lunacy) the deed of 1801, was void or voidable? Second. If only void, whether it was confirmed by that of 1802, when, itis admitted,that Walter Beall was compos mentis? Third. If not confirmed, whether Ormsby, as a subsequent purchaser, can avoid it? And, Fourth. Whether the Fayette decree can be questioned, in this suit?
Parallel be- i tween the le-' gal consequences of the acts of infants and lunatics; the acts of each alike void or voidable.
The deed of W. Beall, of 1801, placed on the footing of a deed by an infant.
A parallel is supposed to exist between the civil acts of lunatics and infants. This is the well established doctrine of the law, as evinced by a series of decisions, in England and the American states. It is not ncces- ) sary to inquire inlo the reason or fitness of this analo|gy. Its judicial sanctions, give it the irresistabie force of unquestionable authority. But if there had been no decision upon it, we should be inclined to the opinion that the contracts of lunatics and infants, should be identical in their legal effects; and that such acts of an infant as are void, should be void if done by a lunatic; and such as are only voidable by plea of infancy, should be but voidable by reason of lunacy. The only exception to this parallelism is, that (according to a preponderance of authority,) the lunatic cannot, himself, like the infant, plead his disability. We know of no other. The authorities conclusively show that the contracts of infants and lunatics, are alike void or voidable. 3 Bac. Abr. 301; 1 L. Ray, 313; Highmore, 113; 3 Mod. 308.
Infants and lunatics were placed on the same footing of entire exemption from liability for any contract, by the Roman law; institutes Lib. 3 tit. 20. And itis admitted by all the counsel in the argument of this case, that when contracts of the one are only voidable, those of the other class are not void.
If there be any difference between the effects of a contract by an infant and that of a lunatic, it must be to the disadvantage of the latter; for as it seems to be generally admitted that a lunatic cannot avoid his acts, by plea of stultification, there might be some difficulty (if such be the law) in determining that any of them could be absolutely void.
However this may be, it will be sufficient for the decision of the first point in this case, to consider the *239 tleed of a lunatic,as adeed by an infant; and this we shall do, because the authorities are more abundant and more satisfactory on the voidness or voidability of deeds by infants, than of those by lunatics.
The tleed of a lunatic is not void, but voidable, and cannot be avoided by sane parly.
Difference between common and civil law in regard to contracts by infants.
It will be fair then, to consider the deed of 1801, in this case, as one executed by an infant, and if in so considering it, the' result shall be, that it is only voidable, the appellee will certainly have no right to complain ; because it could not, in that event, be more than voidable by W. Beall, even if his lunacy bad been indubitably established.
It is somewhat doubtfulj whether Walter Beall was$ in the proper sense of the term, a lunatic in 1801.
The evidence is contradictory and unsatisfactory. It is numerically on the side of incapacity. But when carefully scrutinized, leaves the mind in serious doubt and perplexity. If this were, therefore, the only point in the case, we should scarcely he willing to decide against the conclusive validity of the deed. But waving a decision of this fact, and admitting the lunacy, as if well established, is the deed void or is it only voidable? The answer must be, that it cannot be more than voidable. There is not a perfect coincidence in all the decisions and dicta on this subject. But the force of the argument and the weight of the authorities decisively preponderate against the assumption that the deed is void.
The common law, in this respect more liberal and more advantageous to the interests of infants, than the civil code, enables them to make some contracts which they cannot avoid, and others which they may avoid or not, as they deem most expedient. Very few of the contracts of infants are void. And it is well for them that such is the law. For deplorable indeed, would be their condition, if, during the period of their minority, which is fixed by arbitrary law, they could make no contracts for their own benefit. Their legal disability would then be the opposite of what it was intended to be. It would be a handcuff instead of a shield. And the law would be their worst enemy, instead of being, as it professes to be, their guardian and best friend. For if all the contracts of infants be void, *240 they are not only not binding on them, but create no obligation on those with whom they may be made; and infants would be thus doomed to vassalage, and frequently to destitution and oppression.
Priviloge of infants in avoiding their contracts.
The rule as to what contracts are void, & what Voidable,
The enlightened benevolence of the common law, therefore, enables infants to make valid contracts with adults; and to secure their inexperience and imbecility from imposition, allows Ike infants, but not the other parlies, the personal privilege of avoiding them, if they shall consider them disadvantageous. This is exactly as it should be. There are very few contracts from which the adult party can escape under cover of the disability of the minor party. And it is questionable whether it is consistent with sound policy and the reason of the privilege of infancy, that there should be any. But those whose light we are bound to follow, have, for ages, admitted that there may be a class of contracts with infants, which are entirely void, and which, therefore, either party may disregard. And although we may be unable to perceive the wisdom or justice of the distinction, it has become the law.
A contract is void when it is a nullity, obligatory on neither party, and insusceptible of ratification; when either party is bound, or it may be confirmed, it is only voidable. What this class of void contracts is, has not been yet ascertained with satisfactory precision. There are some dicta which countenance the inference that all contracts are void, unless .the thing contracted about pass by a delivery of it. This doctrine is relied on by the appellee. Other authorities insist that all parol contracts which are, on their face, prejudicial to the infant, and such by deed as do not take effect by delivery of the deed, are void; and that all others are merely voidable, excepting those for necessaries,'which, generally, are binding. Of the two, the latter, we consider the better doctrine of the law; and one more accordant with reason than the former. The only objection to it, is that it may be too comprehensive. We doubt whether the same test should not be applied to contracts by infants for personal and for real estate, to those which are parol, and those which are by deed. And we doubt too, whether the fact that a deed does or does not take effect, to pass title by a delivery of the *241 áeéd, should have a decisive influence on the question^ whether it be void or voidable.
A general principle, that no deed made by an infant, is void for infancy alone. .Ifany exception; only when to deciato it void, would concur with the privilege of the infant, and be for his benefit".
"When the right passes ■ by delivery of the deed, deed not void
Leading eases to the contrary.
'fhe distinction between the delivery of the deed and ¿bat of the land, seems to be arbitrary, and to have oN tained the apparent force of authority, either by the application of reasons peculiar to the ancient tenures and conveyances of England, or by a blind acquiescence in loose “obiter dictaAnd as there is some diversity in the decisions on this point, and the old prevalent doctrine seems to be irrational and not precisely defined, we do not know that we should recognize it, if it were material to do so in this case.. We incline to the opinion expressed by Lord Mansfield, that “there is no instance where the other parly to a deed can object on account of infancyand consequently, that no deed of an infant is void, for infancy only, unless one might be so, which would be embraced by the following classification, suggested by the same jurist: “If a new case should arise where it would be more beneficial to the infant that the deed should be considered as void, if he might incur a forfeiture, or be .subject io damages or a breach ,of trust, in respect of a third person, unless it was deemed void, the reason of the privilege would warrant an exception, in such case, to the generalrule.” If cases of this kind can occur in this country, in which it will be advantageous to the infants to consider the contract void, it would be consistent with the reason of the privilege accorded to infancy, to render it void. But such cases can rarely, if ever happen. And it is doubtful whether it would not be better for infants that none of their contracts should be avoided, by any other persons than themselves; and consequently whether it would not be best that all their contracts should be only voidable. Be this however, as it may, we are very well satisfied that a deed which passes a right by the delivery of the deed, is not void; and whatever else the authorities may intimate, they clearly prove this.
The leading cases which tend to - the contrary conclusion, are those of Thompson vs. Leach, 3 Mod. 310, and Loyd vs. Gregory, Cro. Ch. 502. The dicta to the same effect, in some elementary treaties, were inadvertently copied from these cases. These authorities *242 will be found, on a strict examination, to be entitled tC but little respect. The cases turned on other points; and the allusions to the livery of seisin, are “obiter sayings.” And the word “void” is used synonymously with “voidable.”
Authorities ti cases pstablisbinsi the principle.
These cases, therefore, furnish very little weight of authority.- Besides,- they have been Overruled by the case of Zouch vs. Parsons, 3 Burrow, 1805-6-7-8, and by many other cases.
In Zouch vs. Parsons, a deed of lease and release (where there was no livery of seisin; as in the case of a feoffment,) was declared not to be void; and this, ever since, has been considered a leading and authoritative decision. In his opinion, Lord Mansfield, among other things, says “there is no difference in this respect, (viz: ás to the effect on infants) between a feoffment and deeds which convey an interest. The reason is the same. The delivery of the deed must be in the presence of witnesses, as much as'the livery of seisin. The ceremony is as solemn. “That the witnesses would not attest if they saw him an infant,” holds equally as to both. “The distinction between the deeds of femes coverts and infants, is important; the first are void, the second voidable.” Speaking of the cases, in which if had been said that leases without reservation of rent and surrenders, are void; he says, “as to the first there are many obiter sayings, but there is no sufficient authority, to outweigh the reasons against this position. I cannot find a case adjudged singly upon the ground,'” Then refering to some cases cited in argument, he says, “the lease was by parol. But reason soon prevailed; and it has long been settled, that an infaut may make a lease without rent, to try the title,” &c. “What seems decisive is, that the lessee can, in no case avoid the lease on account of the infancy of the lessor; which shows it hot to be void, but voidable only. And it is better for infants that they should have an election.” And as to the case of a surrender, he says, “1 know of no judgment upon the ground that such a surrender is void. Most undoubtedly, the other party cannot say so.”
“The end of the privilege is to-proten infants. To' that object, therefore, all the rules and exceptions must be directed}”
Since the statute of Uses 27; Iter;. 8, aad the act of Kentucky of 1797; seo. 12, relative to conveyances : deed executed and delivered, passes title as completely, as feoffment & livery of seisin.
*243 Other authorities are abundant. Lyttleton says, ¿‘if before the age of twenty.one, any deed or feoffment, grant, release, confirmation, obligation or other writing, be made by any of them, all serve for nothing and may le avoided,''’ He did not mean that they are all void. He places them all on the same ground, and declares that they “may be avoided;” clearly showing that they are only voidable, and all equally so.
“The delivery of a deed cannot he void, but only voidable;” Bro. Abr. title, dum fuit infra etatem He, (an infant.) may avoid it. (that is a deed) when he will; 2 Inst. 673. Therefore Coke did not consider the deed void. The lease of an infant is voidable only, Cro. Jas. 320; Ral. Abr. 731. An infant cannot plead non estfactum to his .deed, because it has an operation from its delivery; Cro. Eliz. 115; 1 L. Ray. 315; 17 John. 373; 2 Starlde,724. “Tbedeedof an infant is not void but only voidable; lb. If an infant deliver a deed, and when he attains legal maturity, deliver it again, the second delivery is void, because the first is good until avoided; Perkins Sect. 154. A deed by an infant conveys a seisin and passes a right to the grantee; 14 Massachusetts Repts. 462. All contracts under seal by infants, have a legal force until avoided ; lb. “All such gifts, grants or deeds, made by infants, which do not take effect by delivery of his hand, are void; but all gifts, grants or deeds, made by infants, by matter, in deed or in writing, WHICH DO TAKE EFFECT by delivery of his hand, are voidable by himself, his heirs, and by those who have his estate:” Perkins Sect. 12. This shows clearly that all deeds which take effect, or pass a right, by delivery of the deed itself, are only voidable. It is susceptible of no other construction. And this construction and the conclusive authority of the extract, are recognized by Lord Mansfield, and by this court, in the cases of Cannon vs. Alsburry; 1 Marsh. 76; and Philips vs. Green, 3 Ib. 7.
If the thing, or a right to it, pass by delivery of the deed, the deed is not void. Since the statute of Henry the VIII, called the statute of Uses, there are many modes of conveyance which pass the title as effectually as a feoffment, with livery actual or symbolical. And the. execution and delivery of which deeds are au *244 thenticated in a manner as solemn and as public as feoffments were by the antiquated ceremonial of livery of seisin. And even before that statute, deeds of covenant, for the payment of money or the performance of some other act, were as effectual in vesting a right in action, as they have been sinpp. ffnd it cannot be admitted that they are void when executed by infants. But they should all be void, ;f the delivery which has been required, mean a manual tradition o,f the thing, the right to which is transferred by the deed or writing. In this country there is no livery of seisin. A deed when delivered, passes the whole right, including the possession. Kentucky act of conveyancing of 1797, Sec. 12, and Green vs. Liter, 8 Cranch, 234. A deed in this country, perfects the title. A feoffment did not pass the right. It was the livery which transferred it. A deed, when delivered, has the same effect here tb pass the title, that a feoffment with livery had in feudal times. Is it not then reasonable, that in all respects it is as effectual, as the feudal conveyance, by feoffment with livery. If it is as effectual on all others^ why not equally so on infants? It is so. No reason can be imagined, for making a feoffment more valid than a deed of bargain and sale. And every reason for rendering a feoffment by an infant operative until avoided by hiipself or representatives, applies with full force to every other deed. Perkins was not mistaken, nor were Mansfield and those who have succeeded him; nor were the court of appeals, of this state and of other states, mistaken in the construction given by them to the X2th section of Perkins.
The deed of an infant maybe confirmed without an acknowledgement or delivery,or new deed; Bac. Abr. title infancy; 15 Massachusetts Repts. 2.20; 11 Johnson’s Repts. 541-2-3; 14 lb. 12^; Bingham on infancy, 65. It. cannot, therefore, be void. Blackstone says, “Idiots and persons of non sane memory, infants and persons under duress, are not totally disabled either to convey or purchase, but sub modo only; for their conveyances and purchases are voidable, but not actually void;” thus distinctly placing all the persons men tioned on the same ground, and declaring that none; of their deeds are void.
^rest^aLos" by the deed of a lunatic,< tí¿fe_0D ^V°l
The deed of a lunatic or person of non sane mind, i's only voidable; Beverley’s case 4 Co. Repts. 123, b. 2Black. Com. 290; Newland, 16; Shepds. Touch. 233. And all the cases which tend to the doctrine that lunatic cannot stultify himself, at the same time show, in advocating that position, that if they are right, the deed of a non compos cannot be void; because if he .cannot avoid it, a present interest passes by it, and it is good against him. If a lunatic may plead his disability, still it is clear that the other party to the contract cannot avoid it on that account, and therefore it is not void. And there is, as before stated, no reason why a deed by a person of non sane mind, should be void, when that of an infant would be only voidable.
As to infants, we feel very clear, that the sound and rational doctrine is that their deeds are not void; unless on their face they show that it is impossible that they can be beneficial to them; and we are not well satisfied that even then, it would not be belter and more consistent with principle and policy, that they should be only voidable, If there be any sensible criterion for determining what deeds of infants are void, we are inclined to the opinion that it is not the “delivery;” but the semblance or possibility of benefit to the infant. And that if this be a good test at all, it should apply to all cases with equal effect, whether they be contracts in writing or by parol; excepting such acts as pass or create rights or obligations, by record (for these can only be avoided during infancy.) Such was the opinion of Lord Raymond, ip the case of Holt vs. Clarencieu, and seems to have been the opinion of the learned annotator to Fonblanque; and one reason which (if there were no others,) we would rely on in confirmation of this sentiment, (that no deed is void if it may be for the infant’s benefit,) may be seen in the acknowledged fact ivhich seems not to be doubted by any, that all such deeds may bp confirmed; which could not be the case if they were void; unam quod ab initio non valet, in tractu iemporis non convalescet.”
A parol lease by an infant, is not void; 1 Modern. 25. Comyin, on the authority of the dictum in Thompson vs. Leach, and of Perkins, Sct. 13, lays it down that the bond of an infant is void. By looking into these *246 cases, it will be found that the word void only means “not binding;” or in other words, “voidable.” In the case in Croke Elizabeth, 920, it is evident that the reporter uses the word “void” in the same sense as “voidable.”
That which may be confirmed by assent, when disability removed, or which cannot be avioded by the adult or sane person, pot void.
In Thompson vs. Leach, 2 Salkield, 675, the court says, “the bond of an infant or non compos is void, because the law has appointed no act to be done to avoid them thus plainly showing by the reason assigned, that such bonds are only voidable. And so it is of all, or nearly all the cases which use the word void, in reference to deeds and bonds of infants and persons non compos. The application of one test alone, will undeniably prove it. All those acts may be ratified or confirmed after the removal of the disability, without any new consideration; and in all of them the adult and sane party is bound, though the infant and lunatic may avoid. The references already made, clearly show this; in addition to which, the following are cited: “If an infant after age, promise to pay a bond executed when an infant, he is bound;” 2 Term Reps. 776. .‘.‘This could not be if the bond had been void;” Cro. Eliz. 700.
In Cro Eliz. 920, it is said that a penal bond, by an infant for necessaries, is “void;” but that a single bond is “valid.” It is obvious that the court mean that the penal bond is voidable. And this will be self evident by scrutinizing the case as stated by Coke. It shows that a single bond for necessaries, cannot be avoided, but that a penal bond may be; and therefore, is not binding until ratified or assented to after the infant is twenty-one, and consequently is voidable. Some of these cases show how carelessly the word void has been ¡used. A security given by an infant for another, is only voidable; 2 Term R. 766.
A lease by an infant without reservation of rent, is voidable only, and he cannot plead non est factum; Noy. 130; 2 Institutes,483; SCo.Rep. 119; See also,some of the foregoing authorities showing that the adult party is bound.
An unequal partition is only voidable Co. Litt. 171. If any of the contracts of infants shall be held void, *247 it should be such only as, not apparently, but necessav'tly operate to his prejudice; 13 Mass. Rep. 240; 14 Ib. 461.
Conclusions flP™ piesfnd cases'
A deed of bargain and sale by an infant, is not Void but only voidable; 6 Mass. Rep. 78; 1 New Hampshire Rep. 73.
Without amplifying moré, itéeems to the court, that it is authorized to deduce from the cases cited and the principle involved in them all, when analysed, the following conclusions:
First. The fact of title passing by delivery of the deed, of of the thing granted, is not more essential in considering whether the deed of an infant or non compos be void or voidable, than it would he in the case of an adult and sane person.
Scéond. Nor is the semblance of benefit material as an exclusive criterion.
Third. If “the delivery” be á proper test, if is the delivery of the deed ¿md not of the thing granted.
Fourth. But the rulé laid down by Mansfield, seems fo be the only just, rational and consistent one; that is, that none of the contracts of infants are void, except such as those, in which it would be better for the infant, as a general principle, that they should be' void, than voidable'.
And, Fifth. No contract of an infant or non compos is void, if it can be confirmed or is binding on the other party id it; and the cases cited tó' pi’ove that deeds' and bonds of infants, &c. are void, prove, when subjected to this test, that they are only voidable.
And surely the doctrine could not be tolerated iiy this country, that all deeds by infants are void, and binding neither on them nor the other parties to them.' But such must be the consequence, if all are void that do not pass title by livery of seisin; for there is no' livery here. And if the delivery of the thing were' necessary in the case of a deed, it Would be equally so in other contracts. It would be-equally preposterous fo decide that bo'nds and Other contracts of infants are void, unless they exhibit the semblance of bhnefit. If any such contract be void, it is only such as cannot possibly be beneficial to the minor party.
The deed from W. Beall, to P. B. Ormsfay, must be adjudged voidable, not void.
Privies in blood and in representation inay avoid the voidable deeds of infants &e lunatics. Privies in law and éstate cannot.
A purchaser is such a privy, by representation, that he may avoid the deed of an infant or lunatic vendor, •when such b^avoidedV the vendor, y or his heir,
*248 The privilege of infancy, being personal, thé éthei party to contracts with .infants, are and should be bound! It is enough for the protection and security of the infant, that when he acquires legal discretion, he may avoid or affirm contracts, made when an infant. And this security is increased, by not permitting an adult party with whom an infant contracts, to treat such contract as a nullity. Bind the other party, but leave the infant free. This is the doctrine of the books. It is the dictate of reaso'n, and is the only maxim that accords with the privilege of infancy. There may be exceptions as stated by Mansfield.
But if on a deed, the proper test be the delivery, the foregoing considerations and citations are deemed sufficient to prove that ori that hypothesis, the deed in this case is voidable only; because thé right passed by delivery of the deed, not of the land!
If the possibility of benefit be the proper test, then’ the deed in this case, can be no more than voidable, for it was evidently beneficial.. And if neither should be the test as we should say, (in the absence of authority) óf course the deed is not void.
The next question which occurs, is, can the appellee (admitting the insanity,) be permitted to take advantage of it? ■
Privies in blood and in representation, may avoid the voidable deeds'of infants and lunatics. All the authorities, without any contrariety, concur in this! But whether purchasers, have the same privilege, has not been certainly ascertained by the same unvaried uniformity of opinion. Their right will depend on what is meant by the authorities which decide, that privies in estate cannot avoid. The words, “are voidable by himself, by his heirs, and by those who have his estate,” in the twelfth section of Perkins on the effect of deeds by infants, have received different constructions’. Some judges have suppóséd, that he meant by the words, “who have his. estate,” those who hold by purchase, in contradistinction to heirs. This was the opinion of the supreme court of New York, in the case of Jackson vs. Burchin, 14 John. 127. The only reason assigned by the court for this construction,, is; that m Zouch vs. Parsons, and In Shepherd’s Touch. *249 stone, 233; the twelfth section of Perkins, is recógnized as sound law. But Mansfield and Shepherd have not said, that the phrase “who have his estate,” means purchasers. They say nothing about this. They refer to Perkins, to prove only; that á deed, passing by delivery, is only voidable. And it is very evident, that the expressions last quoted from that sec-lion, are susceptible of other constructions, than that given by the court of New York, as will appear, not only by an analysis of the whole section; but the authorities, which would apparently establish another and different doctrine. Therefore, as the opin-. ion in 14 Johnson, seems to be founded on a misconception of Lord Mansfield and Shepherd; and assigns ho other reason in its support, than they had said, what they never did shy, it should not be regarded as entitled to much influence on this point. 1 Fonblanque; 50,51, asserts, that neither privies in estate, nor by tenure, can avoid the deeds of infants or lunatics, and he is supported in this opinion, by 4 Coke, 124; 8 lb; 42, b. Whittenham’s case; Newland 19; Jacob’s Law; Diet, title infancy. Highmore, 114, and other authorities. Jacob, after quoting the expressions from Perkins, (those who have his estate) says “but privies in estate, such as the donor of an estate tail, &c., and privies in iaw^ as the lord by escheat, shall not avoid, &c,” and Highmore suggests, that the right to avoid the deeds of persons non compos, is founded on the statute, of 17 Ed. 2; which declares, that “after the death of Such idiot, he (meaning purchaser) shall render it (the estate) to the right heirs so that,” &c. None of these, bases, use the word purchaser. But in exemplifying their doctrine, they mention as privies in estate, by. tenure in law, only remainder men, tenants, lords of escheat; and others of the same kind. The decision in Johnson, so far as it applies to a purchaser may be reconciled; with these apparently opposing authors ties, and Perkins may mean purchasers; in the language quoted. We think he does. The case cited from Johnsdn, was one in which a‘n infant, who had made a deed to A, after he came to the áge of twepty-one, 'conveyed the same land .to B, and the question was, whether B. cotfld take advantage of the infancy. It *250 was decided, that he could: because, in the language 0£ ^jje Perkins, in the twelfth section, laid it down, that privies in estate had that right. Although court, may have erred in this construction of Per-Inns, and thus gave a reason for its opinion, which was too comprehensive, yet we concur m the opinion, that the last purchaser might avoid, not because a privy jn esf,a(;e may ayoid ; bu t because a privy by contract errepresentation may, and such is a purchaser.
¿ • an infant, deliver adeed “attains his full age¿ fió delivers a ramo land to C, C may avoid the deed
The differ-privies in. es-tale, and pritracf6^ The heir,"personal representa^h^ser fpUi> anaidiot°or Turn compos, subsequent to deedaVmay b 6 ■avoid the same, after the idfotor*" lunatic.
None of the cases in which it lias been held, that privies in law, and in estate, cannot avoid the voidable deeds of infants and lunatics, have mentioned, or by their terms include a subsequent purchaser from the person laboring under the disability. And we are of the opinion, that when they speak of privies, who are not allowed to avoid, they do not mean such purchasers; but such persons as hold bv privity of esmtc alone. Privies in estate, strictly mean, those only between whom, there are certain rights and relations i'esulling from the estate held, and not from contract between them: Such a privity in estate, or in law exists between a lessor and a sub-lessee, a vendor by °f warranty, and a remote vendee or assignee, the ^or<* by escheat, and the tcrre-lenant, Sic, In such cases there is no right or obligation between these parties, growing out of any contract between them. All their rights,as between themselves, are created by the privity of estate. But it is not so between the lessor, and his lessee, the vendor and his immediate vendee, and obligations which subsist between these are produced by their contract principally.
There is no privity of estate, between a lessee, and assignee; 1 Salkield, 317. It is only where an interest in the same estate, without any contract between the parties, (called privies in estate) constitutes them privies, that they can, with strict propriety and precision, be denominated privies in estate. And although there can be a privity of estate and of contract, between the same parties, the authorities which maintain, that “privies in estate” cannot avoid the deeds of infants, Sic., must mean those only, whose privity is exclusively that of estate. Blackstone, in the 2d vol. of his Commentaries, page 355, sa\ s, “privies to a fme *251 are such, as are any way related to the parties who levy the fine, and claim under them by any right of blood or the right of representation; such as are the heirs general, of the cognisor, the issue in tail, since the statute of Henry the VIII; the vendor, the devisee, and all others who must make title by the persons who levied the fine. Forthe act of the ancestor, shall bind the heir, and the act of the principal, his substitute, or such as claim by any conveyance, made by him subsequent to the fine levied.’ The same doctrine is affirmed in Coke’s Rep. 87. And Blnckstone says in the same book; (2 .Comr’s 291) “clearly the next heir, or other person interested, may after the death of the idiot, or non compos, take an advantage of his incapacity, and avoid the grant.” He means by “other person interested,” the-personal representative, or any one who has acquired a right to the estate from the idiot, or non compos, by corn-tract, after the deed sought to be avoided. Of this there can be no doubt. “If a lessor grants his reversion, the grantee and lessee, are privies in estate; privies in contract, extend only to the persons of the lessor and lessee, and where the lessee assigns all his interest, here the lessor and lessee remain privy in contract, but not in estate, which is removed by assignment.” Jacob title privies, and 3 Co. Rep. 23.
It is evident to us, from these extracts, if there were no other reason for it, that when the cited books speak of “privies in estate,” they do not mean to include as privies, the vendor and his immediate vendee. And these authorities also shew, that a purchaser or devisee,holding his right from the infant or non compos, derived after the attainment of legal discretion, or restoration to sanity, may avoid a deed made for tbe same estate, during disability. Without these authorities we should be of this opinion; and decide, that the cases which have declared, that privies in estate cannot avoid, apply only to those between whom and the infant or lunatic, there is only a privity of estate, and not a privity of contract, There is no reason, why a purchaser, from a person who had conveyed the same estate previously, and when an infant, shall not have as much right to avail himself of the disability, as the heir or executor of the infant has, Indeed there is *252 plainly much reason for his having a stronger right. /Is |jas paid the value of the estate.; they have given nolhing. If he had not bought it,(hey might have reclaimed from the purchaser from the infant: or the infant might have obtained a restitution himself. By his purchase after the removal of the disability, he has given the value of the estate to his vendor and which enures to the benefit of his heirs and personal representatives; as they might have recovered the estate, if he had not bought it, and have virtually done so, by receiving from him its value, why should he not hold it? He certainly has as good a right to it, as if the heir, or his ancestor, bad expressly avoided the deed made during infancy, and afterwards sold if to him. Besides, the deed to him, conveys all the right that the vendor had. As the vendor had a right to avoid the former deed, certainly the vendee has acquired the same right. Why should not such a purchaser, have equal rights with a second morlan assignee, or a creditor? Moreover,the last deed, made after the infant was 21, avoids that made during infancy. An infant must, while an infant, avoid an act done in a court of record; but an act Hin pais,” can only be ayoided iffectually after he is 21; because, when he becomes 21, he may confirm it, although, before, he may have attempted to avoid it. How |s an infant, to avoid a deed? Certainly after he attains lhe aSe of 21i ma)b by aaJ act, expressing his assent, confirm; and of course an act done, after 21, of as much solemnity and dignity as the deed, evincing his disaffirmance, will necessarily have the effect of avoiding it. And this is expressly so decided in the case cited from 14 Johnson.
only avoid of record"0 pending infancy; etherJnvctis *° aCt6
Any act after fng oMi&senting from a ■ deed, delivered during m-fancy, of equal solemnity with the deed, annuls and avoids the deed.
If therefore the deed, made after the disability, shall have been removed, per se, avoids one made to another before its removal, the vendee in the last deed can hold the estate conveyed to him, by shewing the fact, that when the first was made, a disability existed, which rendered it voidable; and for which it has been avoided by 'a subsequent deed to him, and he must therefore hold the estate, unless the other can shew a confirmation before the date of the last deed. This alone, is decisive. And this too is positively asserted by Blackstone, in one of the foregoing extracts.
*253 There is another consideration to prove, that the vendor and his vendee, are not considered as privies in estate, in the sense which that term is contended by some, to have, in the cases which affirm that privies estate cannot avoid.
Whenever a suit is brought, on the mere privity pf estate, it is local. And it has never been intimated, that a suit by the vendee against his vendor, is local. It is undeniably transitory. It is a suit on the contract, and not on the privity of estate. But the same authorities show, that suits by privies in estate are local. Therefore, the conclusion is inevitable, that when they say that privies in estate cannot avoid the deeds of infants, &c„ they mean only such as those mentioned by them, to-wit: the lessee and grantee of the reversion, the donor and the remainder man, &c., &c., who acquire no right from the infant or non compos, do not represent him by contract, are not his substitutes; but hold and claim, either by-operation of law, or by the gift or grant, in which the infant or non compos, has had no active or voluntary agency.
The lord, by escheat, does not claim by any act or contract of the deceased holder. He does not derive title from him; nor does the remainder man, nor the grantee of the reversion, hold from the tenant of the particular estate or the lessee, by any contract with them, or in consequence of any act done by them. Between such parties, there is no right excepting what results from mere privity of estate, or of law, and therefore some are called privies in law, and some privies in estate. They are not privies in contract or in representation, as the purchaser is. And we have been unable to find any case, which intimates that a subsequent purchaser may not take advantage of the infancy of his vendor, and by pleading the disability, avoid the estate, conveyed by the infant to another, when the vendor laboured under a disability, which rendered it voidable.
. Hence, we conclude, that the apparent discrepancies, in the authorities on this subject, do not in fact exist, or may be easily reconciled. And therefore concur in the opinion, in 14 Johnson, that a purchaser may *254 avoid the deed which his vendor might avoid; and that, by conveying to him, the vendor for himself, has avoided it. This opinion in Johnson, is, we have no doubt, sound law, although the reason for one branch of it, is misconceived. But it may be said, that lunatics cannot stultify themselves; and therefore,cannot, like infants, avoid their deeds; and consequently, that purchasers from them, cannot avoid them.
jOeed exeoutvered b ^ one •when »o?i ’ compos, may ^rch^ser* ^ it ur ¡ng Tucid interva], tho> Sve°r St!11 ■ w ‘
This is specious, but no more. Whether a person non compos, may or may not plead his disability, is, in our opinion, yet a uquestio veosaia-fi1 which, without any violation of ourjudiciai duties, we might decide cither way. The reason and equity of the case, are on one side; the weight of more ancient authority on the other.. But the hard and arbitrary interdiction, enforced by some ancient dicta, and acquiesced in, by some more modern cases, and in Kentucky too, has been relaxed, where it originated, more and more, as light has been diffused; and the only question on this point, would be, whether the doctrine, is so inflexibly settled against the lunatic, that “nolens volens,” wo shall be bound to recognize it as the fixed law. This we shall not now decide, because it is not necessary to do so in this case.
Whether a non compos, can avoid his own deed or not, his heirs and representatives may. And we see no reason why a bona fide purchaser from him, may not. The equity and reason of the privilege, apply to a purchaser, as well as an heir. Although the luna^c mav n(?t he permitted to benefit himself, by dig-affirming a deed, made by him, under mental disability, his subsequent deed tpa purchaser, after a recovel7 sanity, indicates his dissatisfaction with the former one; and although it may not, as in the case of infancy, avoid the first deed, it vests, in another, as much right to do it, as the heir can possess. And the authority of one of the extracts from Blackstone, seems decisive on this point. For the expressions “heir, or other persons interested,” can mean nothing else, than the heir or other person, who shall have, acquired from the non compos, an interest in the estate conveyed.
The mortgage of W. Beall, of 1802, reciting that of 1801, indicates assent, and operates as a confirmation, he being-then sane.
Parties and privies to a deed, a'ré es-topped by recitals in such deed. P. B: Ormsby a purchaser, with notice.-
Willingness at ene time, its receive com’ths. paper, which is not delivered, does not bind afterwards.
*255 We are therefore of opinion, that the appellee in this case,- as purchaser, has the same right to plead the lunacy of Walter Beall, as the heirs of Walter Beall would have.
But can such a plea, be availing to either the heirs or purchaser? It cannot; because the deed to Breckenridge, in 1802, (when it is admitted, that W. Beall, was not disabled) is a confirmation, by Beall, of that made in 1801; and Ormsby’s is posterior in date,'to-wit : in 1804. Any act, which shews assent, especially a recognition in a subsequent deed, which (as that of 1802 does) refers to, and describes the voidable one, in a manner to evince an acquiescence in it, is a valid and irrevocable confirmation. Bac. Ab. title Infancy. 15 Mass. Rept’s. 220; Gilb. Ten. 75; 11 Johnson’s Reports, 542; Reaves’s Dom. Rel. 240; Philips vs. Green, Man. of C. Appl’s.
Beall’s heirs and all claiming under him, by purchase, since 1802, are estopped, by the recital in the deed of 1802, from pleading his lunacy to avoid the previous deed of 1801. The mortgage of 1802 recites, that, that of 1801, is given for the same property; states that it is sufficient for the payment of the debts to be secured by each; and certainly is an effectual waiver of all right to avoid the first. Besides, as each deed was executed to Breckenridge,- whenever the estate is sold, at his instance or that of his representatives, to satisfy the first mortgage, all title passed by the dccd-of 1802, to Breckenridge, enures to the purchaser under the decree. For Breckenridge cannot sell the estate to pay one debt and still hold a lien on it to secure others. The whole title is sold; and title is an unit. The alleged lunacy of W. Beall, therefore, in 1801, cannot benefit Ormsby, by enabling hind to avoid the deed of 1801. And he cannot complain; because he had, when he purchased in 1804, either actual or legal notice of all the mortgages; and certainly had notice of them, when he purchased, at the commissioner’s sale, the same property the second time.
The fact that the appellants were willing, when the first decree was rendered directing the sale, to accept *256 Commonwealth’s paper, cannot benefit Ormsby. They had to get another decree, and that directed the sale to be for specie. The creditors were under no obligation to take bank paper. The sale is good.
The defect, ¡ if any, in the) proceedings ! of the Fay- j ette circuit l court, not to ] be examined in this case, collaterally and incidentally.
The service ®f process, in a county, and the acknowledgement of service, sufficient evidence of residence to give jurisdiction on a bill to foreclose', as the proceeding is, inpersonam, as well as in ran.
Nor Can any alleged defect in the proceedings in the suit for foreclosing the mortgage, benefit Mr. Ormsby. Waiving the very questionable attitude in which he presents his claim for relief, after an unsuccessful attempt to avoid his purchase under the decree, in the circuit court, pending the suit in chancery; the fact of his making the purchase on such a judicial sale, and the additional circumstance, that his property, after judgment on his bond for the price bid by him, has been sold to satisfy that judgment; nevertheless, without any of these objections to the relief sought by him; which would be very cogent, the decree which he Seeks to avoid, opposes an insuperable barrier.
If the court had jurisdiction; and such parlies were before it, as to enable it to decree at all, no defect of parties or other irregularity, can authorize this court or any other, incidentally to call the decree in question; or consider it in any other light, than that of a final ¡and conclusive decision between the parties to it, until ■it shall be reversed by the appellate court, in a direct proceeding for that purpose. Nothing appears which can show want of jurisdiction in the circuit court of Fayette.
It is true, if none of the defendants resided in Fayette, aS the mortgaged property was elsewhere, the court would have no jurisdiction of the case. But unless both the realty and the persons were out of that county and fixed in some other, the court had jurisdiction. Á bill to foreclose is in rem and in personam. And either the thing or person of the defendant gives jurisdiction. Now, although the fact may be, that none of the defendants resided in Fayette, it does not necessarily so appear in the record. Process is executed on one of them in Fayette. And there is no evidence in the case which would authorize this court ta decide judicially, that Samuel Beall, o'n whom the sheriff of Fayette served a subpiena, or Norborne B. Beall, who acknowledged service, (and both of whom answered.) were not resident in Fayette, The an *257 áWefs dó not deny the jurisdiction on- any such ground; nor could the plea of residence be material, unless the Bealls had been served withprocess out of Fayette.
Omitting to make the - trustees of S, Beall def’tsj no error.
Breckenridge’s heirs not being parties, does not nullify the decree.
The payment of a mortgage debt, whether before or after, forfeiture extinguishes. the debt, a'áít the title vc.'ts m mortgagor, or purchaser from jnortgraiior, Without release or re-conveyance.-
*257 There were certainly, both complainants and defendants enough to make a case fit for adjudication; and although there may be others who might, and perhaps ought to have been made parties, and although, for this defect, the decree might possibly be liable to be reversed, such a'defect is not sufficient to invalidate it, in the collateral and indirect mode attempted.
It would have been more regular to have made the trustees for Samuel Beal!, defendants. But this was not necessary. Because: First. They were only nominally interested, the beneficial interest being in Beall’s heirs; who were defendants. And, Second. The .time which had elapsed.from the .date of the trust and the tacit admission of Beall’s heirs, that it had been fulfilled, are sufficient to authorize the presumption that it was extinguished. S. Beall’s heirs are; at all events, estopped now to set up any claim under the trust, and of course, that deed cannot render the right of Ormsby more insecure than it would be without it; Bul. ni. pr. 110; 3 Bro. 289; 3 Pr. Wm. 287; 7 Johns. Repts. 283; 3 Ib. 386; 12 Ib. 242; 5 Johns. Cha. Repts. 552.
It would also have been more regular, to have made Breckeriridge’s heirs parties. But this omission cannot tender the decteea nullity. The mortgage was only a collateral security; Any thing that assigns or extinguishes the debt; transfers or discharges the mortgage deed; 2 Marsh. 109; 2 Burrow; 978; 11 Johnson’s Repts. 534; 15 Ib. 319.
Where a mortgage is paid off, no release is necessary to reconvey the title to the mortgagor; 18 Johnson, 7; and it would seem from this case, that it is not essential that the payment should be before breach of the com dition.
A payment of the mortgage debt extinguishes the mortgage, at law, as well as in equity. The mortgage is but a chattel interest. The right to the money passes to the personal representative of the mortgagee, and his receipt of the debt, is good against the heir. The wife of the mortgagor is dowable, and the wife *258 of the mortgagee is not, even after forfeiture. Thé‘ estate mortgaged may be sold to pay the mortgagor’s" debts, but not for the debts of the mortgagee. The debt cannot be separated from the mortgage. Tile mortgagee, after forfeiture, may "maintain an ejectment against the mortgagor to recover the possession of the estate mortgaged, that he. may have the benefit of the profts. But the legal title, pro forma., is vested in the mortgagee after forfeiture,/!»- the sole.pwpose of securing his debt. He cannot sell or assign the estate without parting with the debt; and it seems to result, necessarily, that by an extinguishment of the debt, ipso facto, the perfect legal title relapses to the mortgagor. It is not doubted that a payment of the debt, before forfeiture, extinguishes the mortgage at law. But there are many learned judges who doubt whether a' payment after forfeiture, will have the same effect. On this point there is great diversity in the cases reported, as well as iri the ilaudoritas pfudentum.” But ever since the days of Hardwick, the opinion has grown more and more prevalent, that a payment, at any time before the title has been passed to the mortgagee, by a decree or sale, will per se at law, as it will in equity, divest the mortgagee of all title. In support of the foregoing propositions, see 4 Johnson’s Repts. 42-3; 2 Bur. 969; Douglas, 630; Ib. 455; 6 Johnson, 294; 7 Ib. 278; 10 Ib. 381; 7 Massachusetts Repts. 139; 5 Johnson’s Cha. Repts. 552-570-454; Tullee, 185-6; Powell on mortgages, 683.
A stranger cannot set up the title of a mortgagee as an outstanding title; 6 Johnson, 290; 7 Ib. 278; 10 Ib. 381. A conveyance by the mortgagor, with covenant of seisin, before foreclosure, or possession taken by the mortgagee, is no breach"of the covenant in his mortgage; 7 Johnson, 376. The mortgagor in possession may maintain trespass against the mortgagee for an entry on the mortgaged estate, after forfeiture; and if the defendant plead liberum tenementum, the mortgagor may reply that the freehold is in him; Runyian vs. Mersercan, 11 Johnson, 534.
The foregoing propositions, which are affirmed and undeniably sustained by the authorities which we. have sited, leave us no just ground' for resisting the condo *259 sion that a payment of a mortgage debt, whether before or after forfeiture, is in law, as well as in equity, an extinguishment of all title in the mortgagee to the estate mortgaged; and that, consequently, no veyance in either case, by the mortgagee or his heirs, is necessary to perfect the title of the mortgagor, or of a purchaser under a decree of foreclosure and sale. Either a payment or a sale by decree, would seem sufficient. If we are mistaken in some of the reasons for this opinion, still as the executor of the mortgagee has a right to the debt, if he sue in chancery and obtain the amount of it, by sale of the property, the heir is bound, because he is represented, “quoad hoc,v by the executor, and it would, therefore, seem that the title of the heir passed.
The mortgagor may maintain a bill against the mortgagee or his heirs, for a release or reconveyance, after payment. But this is not because the payment is not an extinguishment, but only because the fact of payment may not be, at all times conveniently susceptible of proof without written or record evidence. Such a hill in such a case, is.ffied as a precautionary measure. But the fact of'payment is sufficient, if it can be made to appear, without a reconveyance, particularly if it be manifested by a decree of court.
In this case, the final decree which will be rendered, .and the former decree, under which the lot was sold, will be ample and indisputable evidence of the payment of the mortgage debt, and the consequent extinguishment of the title of Breckenridge’s heirs. The executors of John Breckenridge have a right lo receive the money. The heirs not only assent to their receiving it, but in this suit insist on it. If, therefore, they could have any legal right to the lot after the payment, they have waived it, and will forever be estopped by this record, from asserting it. We are, therefore, of opinion that Breckenridge’s heirs were not necessary parties, although it would have been more proper, for the prevention of future .contests or doubts, to have made them parties.
But if we shall be mistaken in this opinion, nevertheless, the decree was not a nullity, and cannot be dis *260 regarded by the court in this case. If Ormsby’s title would not be secure without a conveyance by Breckenridgels heirs, still the salé should not bé pancelled* unless it could be shown that he could not procu,re such a conveyance. He would only have had a right to go ipto chancery to obtain a release by the heirs. As, therefore, in this suit, in which they are parties, they seem to waive all pretence to any claim to the mortgaged property; and as a reconveyance may be decreed if desired, so as to remove the most fastidious objection to the title, of Ormsby, no ground is furnished in any aspect of ■ the case, for perpetuating the injunction. If Ormsby desire a release by the heirs, he can have it, ^nd then there could be no objection to enforcing his contract of purchase.
Decree and mandate.
■Petition for a ■re-hearing.
Wickliffe and Chinn, for appellants; Haggin and Crittenden, for appellees.
The decree of the circuit court is, therefore, reversed, and the-cause remanded with instructions to dissolve the injunction, and decree a release by Breckenridge’s heirs, if Ormsby ask for it. But as he did not file his bill to obtain title, nor complained in it that he could not get it, and as he has, in our opinion, all the right that ever vested in W. Beall, or J. Breckenridge, and as good an one as Breckenridge’s heirs can make to him, he must pay the costs in this and in the circuit court.