(No. 13403.—Decree affirmed.)

ROSE CASSIDY, Appellant, vs. MARGARET LENAHAN et al. Appellees.

*Opinion filed October 23, 1920.*

1. LIMITATIONS—*title may be acquired by limitation where parties are ignorant as to location of lot line.* The party in possession, for the statutory period, of improvements built over a lot line acquires title by limitation to that portion of the adjoining lot on which the improvements extend without having made oral declarations of his claims, and the facts that the improvements were inexpensive and that the parties were ignorant as to the location of the lot line will not affect the operation of the statute.

2. SAME—*negotiations with party in possession will not re-vest title after statute has run.* After title by limitation has become vested in the owner of a lot whose improvements were built over the line of the adjoining lot through ignorance as to its location, ineffectual negotiations for the removal of the improvements can not be set up by the owner of the adjoining lot as a recognition of her title, as the bar of the statute, when once complete, cannot be destroyed except by purchase, by limitation or in some other manner recognized by law.

APPEAL from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

GEORGE A. MASON, (HENRY E. MASON, of counsel,) for appellant.

RUDOLPH D. HUSZAGH, and EDWARD G. BERGLUND, for appellee David Braverman.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 5, 1900, the appellant, Rose Cassidy, acquired title to lot 8 of Givins & Gilbert's subdivision of a tract of land on the north side of West Twelfth street, in Chicago. Her lot fronted on that street, and on May 22, 1917, she filed her petition in the circuit court of Cook county

in this case alleging that the records in the recorder's office were destroyed by fire on October 8 and 9, 1871, and praying the court to establish and confirm her title in fee simple. The appellee David Braverman and others were made defendants. The others defaulted and he answered. He was the owner of lot 9 of the subdivision, adjoining lot 8 on the west, and by his answer he claimed title, by adverse possession for the statutory period, of the west part of lot 8 of an average width of about four and a half feet described in his answer, on which there was a story-and-a-half and basement frame cottage extending about two feet on lot 8, and a cement sidewalk along the east side of the house about two and a half feet wide, with cement steps for a few feet, and a two-story frame barn extending a little over three feet on lot 8. The issue was referred to a master in chancery, who took the evidence and made his report that Braverman and those through whom he claimed title had had open and continuous possession for more than twenty years of that portion of lot 8 which was encroached upon by his cottage and an old wooden walk on the east side of the cottage which had been replaced by the cement walk, and also that portion of the lot in the rear which was occupied by a two-story barn, but that he had failed to prove that such possession was of the adverse character required by the Statute of Limitations. The cause was heard on exceptions of Braverman to the finding as to the nature of his possession, and the chancellor found that Braverman and others in privity of estate and possession with him had been in the open, notorious, actual, adverse, visible, exclusive, continuous and uninterrupted possession for more than twenty-five years of the portion of lot 8 on which the cottage, old wooden walk, barn and a fence had been located, which portion was particularly described in the decree. From that decree this appeal was prosecuted.

At the hearing before the master the appellant proved title to lot 8, and Braverman then introduced evidence of

the possession by himself and those under whom he claimed of that portion of the lot described in his answer. The house and the board walk along the east side of the house were built in 1885 by Edward J. Coen, and in 1888 James Wright obtained title to lot 9 from Coen and took possession of the premises. A fence was built in 1890 at the north end of the sidewalk north to an alley at the rear, and about 1894 Wright built the two-story barn extending over the line on lot 8, as stated. Wright died in 1904, leaving Ellen Wright, his widow, and his children his heirs-at-law, and the heirs conveyed the lot to their mother. In 1909 Ellen Wright conveyed lot 9 to Braverman, who took and has since held possession of the premises on which the improvements had been made, and the house, sidewalk and barn have remained in the same location, except that the board walk was taken up and a cement walk and steps substituted. The evidence was that the cement walk was a little wider than the board walk and extended a little further on lot 8, and it was built within twenty years before the suit was brought. Wright and all of the subsequent owners of lot 9 supposed that all of the improvements were located on that lot, and they never made any oral declarations that they claimed any title to any part of lot 8. That lot and the other property in the locality was vacant, either prairie or grown up with trees, and there was nothing to indicate lot lines. The successive owners of lot 9 paid the general taxes and special assessments only on lot 9, and neither the appellant nor any of the parties knew that the improvements and possession extended upon lot 8, and the appellant did not know the fact until the fall of 1913. She had lot 8 surveyed in 1916 and then for the first time learned exactly how far the improvements on lot 9 extended over on lot 8. On July 21, 1917, a survey was made of the disputed part of lot 8, showing the location of buildings, fences, walks and other improvements, and a copy of the survey, which is agreed to be correct, is in the record.

There was no contradiction in the evidence of the fact that Braverman and the persons with whom he was in privity, both as to possession and estate, had been in the open, notorious, continuous and exclusive possession of the portion of lot 8 which the chancellor awarded to him, and the appellant filed no objection or exception to the finding of the fact by the master, but there was testimony as to negotiations between the appellant and Braverman for the removal of the improvements from lot 8. Before this suit was begun there were negotiations for a friendly settlement of the controversy in which it was proposed that appellant would contribute to the cost of the removal, and while the exact nature of the negotiations was in dispute, the parties did not agree to anything and no settlement was consummated.

The question upon which the decision must turn is whether the possession of Braverman and those in privity with him was adverse so as to be available under the Statute of Limitations. There can be no doubt that it was inconsistent with the ownership of lot 8 by appellant or her predecessors in title, and was of such a character as certainly would inform them that the intrusion was under a claim of right. Oral declarations that the parties in possession claimed the part of lot 8 occupied by them were not necessary and naturally would not be expected, because those in possession supposed that all the improvements were on lot 9. *James* v. *Indianapolis and St. Louis Railroad Co.* 91 Ill. 554; *Illinois Central Railroad Co.* v. *Houghton,* 126 id. 233; *Faloon* v. *Simshauser,* 130 id. 649; *Shedd* v. *Alexander,* 270 id. 117.

The fact that there was a mistake as to the boundary line between lots 8 and 9 and the owners of lot 9 took possession of the portion of lot 8 believing it to be on lot 9, and that they had no intention of taking any part of lot 8, did not affect the operation of the statute. (*Daily* v. *Boudreau,* 231 Ill. 228; *Grim* v. *Murphy,* 110 id. 271.) It

was immaterial on the question of adverse possession that the improvements were inexpensive and the neighborhood sparsely settled at the time they were built.

There was no evidence that the possession was permissive during the period when the Statute of Limitations was running, and it could not have been permissive when neither party knew that there was any encroachment upon lot 8. Title by limitation had become vested in Braverman long before the negotiations with the appellant for the removal of the improvements, and if there was any recognition of her title in such negotiations it was ineffective to re-vest the title in her. (*Illinois Central Railroad Co.* v. *Wakefield,* 173 Ill. 564; *Lyons* v. *Stroud,* 257 id. 350; 1 R. C. L. 691; 2 Corpus Juris, 137.) When the bar of the statute has been completed the owner can neither use his title for the purpose of a recovery nor as a defense until he shall have destroyed the bar by purchase, limitation or otherwise. *Faloon* v. *Simshauser, supra.*

The chancellor held that Braverman did not establish title to the narrow strip comprising the difference in width between the original board walk and the cement walk and steps which replaced it, or the strip about a foot and a half wide and four feet and five inches long between the barn and alley, and appellee Braverman has assigned cross-errors on that holding. The evidence is satisfactory that the cement walk and steps extended a little further than the original board walk, and the narrow piece of land between the barn and alley was not enclosed or covered by any building. The cement walk had not been in place twenty years, and the evidence sustains the decree.

The decree is affirmed.                    *Decree affirmed.*