JOHNSON v. WHELAN et al.

*98 P. 2d 1103.*

No. 29051. Feb. 6, 1940.

Page & Spencer, of Oklahoma City, for plaintiff in error.

Fred M. Suits, of Oklahoma City, for defendants in error.

BAYLESS, C. J. Luella K. Johnson, plaintiff, appeals from a judgment of the district court of Oklahoma county, favoring Agnes M. Whelan and Robert W. Whelan, defendants. This is the second time these parties have been before this court in litigation over their rights respecting their respective adjoining properties in Oklahoma City. The history of the previous action is material herein because of the issues upon which the present action was tried and is presented to this court. The decision of this court on the former appeal No. 24118, is Johnson v. Whelan, 171 Okla. 243, 42 P. 2d 882.

In No. 24118, Agnes M. Whelan et vir filed a pleading to commence the action styled "Petition for Injunction," and therein they described their property and its location with respect to that of Luella K. Johnson, and deraigned their title. They alleged that the prior grantors of the respective parties had entered into an agreement to construct a common driveway on the property line between

512

the respective tracts, and had so constructed the same and maintained it for many years. They alleged that by reason thereof they had acquired a prescriptive right to the enjoyment thereof, that Luella K. Johnson was interfering therewith, and sought injunctive relief. Johnson answered denying the agreement, denying her acquiescence therein, and alleging plaintiffs had deceived her with respect to the location of the property line when she inquired of them at the time she purchased her property. Upon trial, judgment was rendered for the Whelans as follows:

"It Is Therefore Ordered, Adjudged and Decreed that * * * said defendant and those acting under her are hereby forever enjoined, restrained and debarred from in any way, obstructing, damaging or injuring the concrete driveway, which is on the property line between (said properties) so as to deprive the plaintiffs of the usual and customary use thereof."

This judgment was affirmed. Johnson v. Phelan, supra.

In the action from which this appeal arises, Luella K. Johnson alleges in her amended petition, in substance: The ownership and location of the respective properties; that the Whelans have erected on the rear of their lot a garage that encroaches on her property to the extent of about three feet, that such encroachment is without legal right, and she asked judgment for the ouster of the Whelans and the quieting of her title to the occupied strip of property. The Whelans answered admitting their garage occupied a portion of plaintiff's lot as alleged, denying plaintiff was the owner of that portion occupied by their garage, and alleging they were the owners thereof. They pleaded res adjudicata, and estoppel by judgment by virtue of the judgment in the former action, and also pleaded the various statutes of limitations.

Upon the issues made by these pleadings, the action was tried and judgment rendered.

The judgment appealed from was rendered upon stipulation of the parties as to essential facts and certain instruments in writing as to which there was no dispute. We quote the pertinent part of the journal entry:

"* * * Is of the opinion and does find * * * that the subject matter of this action is the same as the subject matter of the action of cause No. 24118 * * * and further finds that the defendants have an easement in said property herein sued upon and that fact was so adjudicated by said Supreme Court * * * in * * * No. 24118. * * *"

We are of the opinion that the record before us does not justify applying the rule of estoppel by judgment. The principal issue of fact presented and determined in 24118 was the location of the center line of the driveway with respect to the property line between the respective properties. In the pleadings in 24118, quoted above, and in the oral testimony of the witnesses, the issue of the location of the center line of the driveway and the property line was limited to that portion of the properties north of the garages. Thus the fact adjudicated in that action differs entirely from the one herein. Here the parties were litigating over title to a parcel of land not affected by the driveway easement. If it becomes necessary herein to establish the property line and the center line of the driveway as a preliminary to ascertaining the true location of the garage, it could not be determined anew in this action. The determination of that issue in 24118 would be binding.

Defendants state that as a matter of fact the driveway extends to the south line of the respective lots, and that in truth the garage is merely a shell erected over a portion of the driveway. If we could say from the record before us that this is true, estoppel by judgment might apply. As pointed out above, the pleadings describe the driveway as leading to, or extending to, or furnishing a means of ingress and egress to the garages, thereby evincing an intention on the part of the pleaders to end the driveway in litigation at the entrance to the garage. The stipulation entered into in this case states: "* * * present defendants brought an action against present plain-

tiff for an injunction to enjoin present plaintiff from asserting any right to the driveway approaching the garage now in question, * * * and that this court * * * enjoined * * * plaintiff from interfering * * * in the use of * * * said driveway as a means of ingress and egress to the garage. * * *'' There are photographs of the driveway and garage in each of the records, but a careful scrutiny thereof does not disclose whether the south end of the driveway ends at the entrance to the garage, or whether it extends to the rear of the garage, thereby making the garage "merely a shell erected over the driveway." We do not think defendants' statement is supported by the record.

We think it can be seen from these preceding statements why estoppel by judgment does not apply.

If the subject matter of this action is the same as the subject matter of the first action as stated by the trial court, and the other factors are present, the rules of the law of res judicata should govern. Our consideration of the records in the actions leads us to the conclusion that res judicata does not govern.

If the real estate involved be considered the subject matter of the actions, the subject matter is not the same. In the first action, the plaintiffs, who are defendants herein, were seeking merely to protect their real estate that was covered as they thought by one-half on the common driveway, and to protect their right to the use of so much of the defendant's (plaintiff's herein) real estate as had previously been accorded their grantors. They alleged in their amended petition that the common driveway occupied equal portions of the lots of the respective owners. They nowhere asserted the ownership of any part of defendant's real estate, and particularly was no part of the real estate described herein sought or involved by the plaintiffs. The small parcel of real estate involved in the present action differs wholly from that involved in the driveway litigation.

If the purpose of the respective actions, that is, the relief sought and the effects to flow therefrom, be considered the subject matter, there is yet a complete diversity in the subject matter.

The purpose of the plaintiffs in the first action was to establish and protect by law the right to use a common driveway occupying both properties. This right of use was predicated upon a prior agreement followed by long continued use. The dispute over the actual location of the driveway with respect to the property line and the defense of ownership injected by the defendant therein were for the avowed purpose of defeating the plaintiffs' claim of an easement.

This action was brought by the plaintiff (defendant in the former action) to recover the possession of real estate claimed to be owned by her and wrongfully occupied by defendants. The defendants admitted their garage occupied a portion of the lot owned by plaintiff, but they denied she owned it, and, on the contrary, asserted ownership thereof by prescription.

Thus it can be seen that the first action did not involve a purpose that affected or that could be affected by the purposes of the present action. The controversy herein could have arisen even though there had not been such an action as 24118.

These conclusions are borne out by our decision in Freeland v. Dolen, 84 Okla. 286, 203 P. 182, and the decision in Little v. Keaton, 38 Fed. 2d 457. In those cases it was pointed out how controversies over the right to the peaceable possession of land or the enforcement of a certain class of rights under a contract of guaranty might be litigated for certain purposes without constituting res judicata as to controversies respecting other aspects of the ownership of the land or other rights also protected by the contract. There are numerous cases digested under Judgments, Key No. 713 (2) Am. Dig. (West) illustrative of this point.

We have considered whether the issue presented herein could or ought to have been presented in the first action. Issues germane to an action are held to be res

judicata by the judgment. In the first action the plaintiffs were the ones who tendered the issues, and while defendant was obliged to present every defense available and to raise all of the issues that can arise between the parties for a complete determination of the controversy then existing, a defendant ought not to be required to cross-petition for relief from other situations then existing that could give rise to other justiciable issues. The rule relating to the splitting of causes of action is the most general test applicable to finding germane issues, and it is sufficient if the situation does not show a splitting of causes of action. See Freeland v. Dolen, supra.

The plaintiff points out that not only is the subject matter of the two not the same, but there is another very common test that can be applied in determining whether the previous litigation had the effect of settling the issues in this litigation. In 34 C. J. 805, sec. 1226 (f), it is said:

"The test most commonly stated is to ascertain whether the same evidence which is necessary to sustain the second action would have been sufficient to authorize a recovery in the first. If so, the prior judgment is a bar; otherwise it is not, but if the evidence offered in the second suit is sufficient to authorize a recovery but could not have produced a different result in the first suit, the failure of the plaintiff in the first suit is no bar to his recovery in the other suit although it is for the same cause of action."

See our opinion in Comanche Ice Co. v. Binder, 70 Okla. 28, 172 P. 629, and Woodworth v. Town of Hennessey, 32 Okla. 267, 122 P. 224, and Pratt v. Ratliff, 10 Okla. 168, 61 P. 523, to the same effect. When this test is applied to the evidence used in the respective actions, it is clear that each action could be supported by evidence applicable to each alone, and in no wise encroaching upon the other. The determination of the correctness of either party's claim in the former action would not affect the situation with respect to the present action.

We had something of this nature in mind in our earlier discussion herein respecting the purposes of the respective actions. In this connection, we refer again to Freeland v. Dolen, supra.

Although defenses other that res judicata were pleaded and proven, the trial judge limited his judgment to the sole issue of res judicata. We have already pointed out that there was error in this respect, but this does not justify a reversal if the judgment can be sustained upon any of the other issues. Ringer v. Byrne, 183 Okla. 46, 80 P. 2d 212, and many cases cited Am. Dig. (West) Appeal and Error, 854 (2), (2 Okla. Dig. same).

Despite the limited aspect of the trial judge's decision, the plaintiff argued other legal points. The journal entry reads: "* * * and further finds that the defendants have an easement in said property herein sued upon and that fact was so adjudicated by said Supreme Court * * * in 24118." The quotation follows a statement to the effect that the subject matter is the same, and from this we are of the opinion the trial judge did not make the finding that an easement existed from the evidence before him, but rather found that such fact had been adjudicated. The defendants answered all propositions, and in addition to the conclusion heretofore reached on the res judicata issue, we consider the other proposition: Whether defendants had acquired title by virtue of the "statute of limitations and prescription."

Before proceeding further we desire to notice the issues actually pleaded by defendants and the language of the journal entry. Defendants admitted their garage encroached on the land described in plaintiff's deed, that it had so encroached since 1908, and also alleged:

"* * * These defendants deny that the said * * * corner of the said * * * lot 4 * * * is the property of the plaintiff, but state that said * * * portion is the property of these defendants, and that they are now in open, notorious, exclusive, adverse, hostile, possession thereof, and have been * * * for an uninterrupted period of 30 years and that any claim * * * said plaintiff may have ever had in * * * said lot has long since

been barred * * * and that the statute of limitation and the statute of prescription * * * have interposed a bar to her * * * and that she is now estopped by reason thereof. * * *"

This is an outright assertion of title by prescription, and not a mere claim of an easement as decreed by the trial court. The defendants were not asserting an easement irrespective of the sense in which that term may be used. They say they are the owners by limitation and by prescription. Title by prescription in Oklahoma is defined by statute, 11729, O. S. 1931, 60 Okla. St. Ann. § 333, as follows:

"Occupancy for the period prescribed by civil procedure, or any other law of this State as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

There are numerous Oklahoma decisions upon the subject of title by prescription, and in them it seems to be assumed that "occupancy," the term used in the statute quoted, and "adverse possession" generally used in the texts and decisions of other courts are identical. See Goslen v. Waddell Inv. Co., 145 Okla. 269, 292 P. 362, as an instance of the indiscriminate use of these terms. No argument is made herein with respect to difference in legal effect, if any, between the two.

Actually the stipulated evidence seems to be limited to the aspect of occupancy only, for it is stipulated that the parties have erected garages which "are adjajacent to and adjoin, and that there is a community wall between the two garages," and "* * * that the garage * * * belonging to the defendants is located on and occupies * * * the plaintiff's above-described premises, * * *" and "that the said garage * * * was constructed * * * where the same is now situated in the year 1908, and has been and remained on said area * * * since that time"; and "the plaintiff did not discover * * * until the year 1931 * * *"; and "the plaintiff has not at any time * * * granted permission in writing to the defendant to use * * * her said premises." Thus a

plain case of occupancy, without written permission at any time, for a period of 1908 to 1931, or 23 years, when oral permission could not have been given because plaintiff was ignorant of the encroachment, and a period of six years since of occupancy by acquiescence; in the sense that plaintiff knew of the encroachment and did not disturb it until suit was brought.

Both parties rely upon the same recent Oklahoma decisions to sustain their respective contentions on the issue of title by prescription: White v. Saling, 185 Okla. 46, 89 P. 2d 754, for plaintiff; and the same case and Reynolds v. Wall, 181 Okla. 110, 72 P. 2d 505, and Rocher v. Williams, 183 Okla. 221, 80 P. 2d 649, for defendants.

There is hardly a subject of law that is litigated more freely than title by prescription, or adverse possession, and by common admission, hardly any subject of litigation about which there is more confusion, especially on the precise issue. The precise issue before us is: Does one acquire title by prescription by encroaching for the statutory period of time his building on a small portion of an adjoining owner's land, the intruder and the adjoining owner both being ignorant of the encroachment?

We may rule out of consideration at once the decisions in Reynolds v. Wall, supra, and Rocher v. Williams, as well as the earlier case between these parties, because they involve agreements between the parties over boundaries that are in dispute or are uncertain. All of the authorities treat this issue as being entirely different from the one before us. It is true that in Reynolds v. Wall and Rocher v. Williams, the court mentions the old rule with respect to locating a boundary by encroachment by mistake, but that issue was not before the court. The party upon whose property the encroachment occurred had entered into an agreement respecting the line and the actual location of the building.

The case of White v. Saling, supra, involved an issue similar to ours: An adjoining owner located a boundary by

erecting his fence and garage on the property of another, thereby enclosing and using property not actually his. The syllabus lays down the rule positively that such an intrusion can never ripen into title by prescription, and uses as its authority the decision in Reynolds v. Wall, supra, and yet concludes by recognizing that such occupancy or use for the statutory time gives prescriptive right. The decision is confusing and is contrary to the prevailing modern rule and should be, and is, overruled.

In 1 R. C. L. 731, sec. 48, it is said:

"It has frequently been held that a possession of land which is the result of ignorance, inadvertence, misapprehension, or mistake, will not amount to an ouster of the true owner, and, consequently, will not ripen into title. The great weight of authority, however, is to the effect that an open, notorious, and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and that the fact that the possession was taken under a mistake as to boundary lines is immaterial. In other words, the mistake cannot be pleaded in avoidance of the legal effect of the possession."

In the more recent edition of this work, 1 Am. Jur. 914, sec. 211, and page 918, sec. 215, the same general rule is stated. A similar rule is stated in 2 C. J. sec. 185, subd. b, pages 781 and 782, under the heading "Boundaries as Measure of Possession * * * (b) claiming a smaller or greater tract."

"While primarily, and where nothing more appears, possession is referable, for its extent, to the terms of the instrument, another factor must be considered in that connection, namely, the quantity claimed, it being the two factors concurrently considered which fix the limits of the possession, where nothing appears to the contrary the adverse possessor is presumed to claim coextensively with the boundaries of his colorable title; and to this, probably, may be ascribed the frequent failure of the courts to mention the factor of adverse claim in stating the rule.

"Furthermore, the boundaries defined in the instrument do not constitute an absolute limit on claimant's possession; that possession which depends on color of title can go no further, it is true, but additionally there may be a possession beyond such boundaries by virtue of actual adverse entry and occupancy under claim of right, with the other elements generally requisite to actual possession, coexisting with that which flows from the colorable title, in which situation the bounds of claimant's possession are the limits of the tract to which he is entitled under his colorable claim of title plus the additional tract held in actual occupancy. Occupancy beyond the stated limits is not necessarily deprived of its hostility, or other characteristics essential to establish adverse possession, by the existence of the instrument creating or constituting colorable title. The occupancy is, however, referable to the fact of possession and hostile claim and not to claimant's paper title, and any rights which may exist outside of the paper boundaries have no connection with the colorable title, and are governed, as to the duration of the possession and other respects in which any distinction prevails, by the rules applicable to a holding without color of title rather than those applying to a holding under color of title; and possession of such additional tract, like any other possession which is destitute of color of title, is limited to the actual entry and inclosure. Moreover, it requires a very distinct and positive occupancy beyond the limits of the deed before the possession will be deemed to extend further, since its existence serves to throw adjacent proprietors off guard as to the character and circumstances of an intrusion on their possession."

The discussion of this rule in Tiffany, Real Property (2d Ed.) vol. 2, page 1946, sec. 505, "Mistake in locating boundary," observes that close analysis of the reasoning of the courts adhering to the rule that title by prescription does not thereby ripen, discloses that in most instances they are predicated upon the testimony of the occupier that is sufficient to destroy the element of hostile holding, and that actually the apparently diverse decisions can be harmonized. We quote the section:

"The question has frequently arisen whether, when an owner of land, by mistake as to the boundary line of his land,

takes possession of another's land, and holds it for the statutory period, he thereby acquires the title as against the real owner. In some states, in such a case, the possession has been regarded as adverse, without reference to the fact that it is based on mistake, it being sufficient that there is an actual and visible possession without any recognition of the other's title. In other states the fact that, in such case, the possession of the other's land is under mistake has been regarded as frequently material, and a distinction is asserted to the effect that, if such possession up to the boundary as located is with the intention of claiming title to that extent, even though the boundary be incorrect, the possession is adverse, while, if it is with the intention of claiming title to that extent only if the boundary is correct, the possession is not adverse. The decisions of a particular court in this regard are not infrequently lacking in entire consistency, one with another, and occasionally the judicial discussion of the subject is such as to leave us somewhat in the dark as to the exact position of the court on the question.

"Though the courts which assert the possible materiality of mistake as to the boundary line ordinarily state that whether an intention to claim title to the boundary as located in spite of any mistake therein is the important consideration, they fail to tell us what they mean by such an intention, and in the actual discussion of the particular case they not infrequently shift the inquiry from one as to the existence of an intention to claim title in the contingency of mistake to one as to whether a claim of title was actually made or indicated during the period of possession. An intention to claim title in spite of a mistake in the location of the boundary might mean an intention to retain possession until legally ejected, even though convinced of the mistake, or it might mean merely an intention to assert a right to the possession although relinquishing possession by reason of proof of mistake. Probably what the courts have in view in asserting this distinction is that the possession is not adverse as regards land erroneously included in one's possession by reason of a mistake in the boundary line, provided he concedes that if there is any such land he has a mere permissive possession, that he holds possession, in other words, in subordination to any right

therein on the part of the adjoining owner, while his possession is adverse if he does not concede the possibility of mistake, and thus fails to recognize any possibility of right in the other. So regarded, it may be questioned whether the position of the courts asserting the possible materiality of mistake in this regard is so entirely out of harmony with that of the courts which assert its immateriality as is frequently assumed."

Thompson on Real Property, vol. 4, page 211, sec. 3116, states the conflict in the rules, and seems to place more emphasis upon the rule contrary to the one we are adopting; but, in the 1929 Supplement to that work, greater emphasis is placed upon the other rule, and particularly because the later cases follow the trend of recent decisions.

We intend to discuss a few of the decisions presenting fact issues similar to the one under consideration. Goodloe v. Gusmus, 210 Ala. 272, 97 So. 821 (1923). We quote:

"* * * And it is clear that until * * * shortly before this suit was brought everybody concerned in the ownership * * * considered that the pike road was * * * the government line * * *. The evidence goes to show clearly and without dispute that when the defendant purchased * * * in 1898, he was, in keeping with the general error we have mentioned, put into possession up to the line * * * and that continuously, * * * and under claim of right he has * * * for more than 20 years occupied the land up to the pike, building a residence and outhouse, which in part covered the strip in dispute * * *. There was nothing in the evidence to indicate that the defendant's possession originated in an admitted possibility of mistake, no reason to doubt that the defendant believed the pike road lay along the government line. * * * Upon the facts stated, defendant by his possession acquired title up to the pike, even though his belief that the road was coincident with the section line originated in a mistake, and in these circumstances, the title so acquired was not affected by any question as to what the defendant might or might not have claimed had he known there might be a mistake."

Another case is Cassidy v. Lenahan,

518

294 Ill. 503, 128 N. E. 544 (1920). We quote:

"The appellee David Braverman (and others) were made defendants. * * * He was the owner of lot 9 * * * adjoining lot 8 * * * and by his answer he claimed title by adverse possession * * * of the west part of lot 8, * * * on which there was a * * * frame cottage * * * and a * * * barn extending a little over three feet on lot 8. * * *

"Wright and all of the subsequent owners of lot 9 supposed that all of the improvements were located on that lot, and never made any oral declarations that they claimed any title to any part of lot 8 * * *. There was no contradiction in the evidence of the fact that Braverman and the persons with whom he was in privity, both as to possession and estate, had been in the open, notorious, continuous, and exclusive possession of the portion of lot 8 * * *. The question upon which the decision must turn is whether the possession of Braverman and those in privity with him was adverse so as to be available under the statute of limitations. There can be no doubt that it was inconsistent with the ownership of lot 8 by appellant or her predecessors in title, and was of such a character as certainly would inform them that the intrusion was under claim of right. Oral declarations that the parties in possession claimed the part of lot 8 occupied by them were not necessary and naturally would not be expected, because those in possession supposed that all the improvements were on lot 9. (Citing cases.)

"The fact that there was a mistake as to the boundary line between lots 8 and 9 and the owners of lot 9 took possession of the portion of lot 8 believing it to be on lot 9, and that they had no intention of taking any part of lot 8, did not affect the operation of the statute. (Citing cases.) It was immaterial on the question of adverse possession that the improvements were inexpensive and the neighborhood sparsely settled at the time they were built."

The Illinois court takes virtually the position taken by the Supreme Court of Connecticut in French v. Pearce, 8 Conn. 439, 21 Am. Dec. 680, when it says that a person taking possession of land of another, adjacent to land he has purchased, in ignorance or mistake as to the boundary, cannot be said to have formed a conscious intent with respect to the claims of others; for, most generally, he never supposes that he is accountable to any other person for the land he possesses, and never debates in his own mind what he would do in the event of a dispute over the boundary, for he does not contemplate such a dispute.

With these citations in mind, it can not well be denied that the better rule is to hold that where an owner has encroached a building upon the land of another, without permission, and indeed without any thought that he needs the permission of the other, and has maintained it thus for 15 years or more, he has a title by prescription within the meaning of section 11729, supra.

We are convinced that the decision in Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 97 A. L. R. 1, and the annotation following in A. L. R., are as convincing arguments as can be found for the rule we announce.

Some of the writers state there is no way in which the several decisions on the issue can be reconciled, and this is true even as to the decisions in the same jurisdiction. Much of this confusion arises from not observing the boundaries of the precise issue presented by the facts in the particular case.

The confusion has been compounded and the decisions made even more irreconcilable by a search on present evidence of the intent with which the possessor took possession. Of course, in all of those cases where the intruder comes into the court presently and recognizes the other's title and renounces any intent ever to hold adversely, there can be no adverse possession for the lack of hostility in the holding. But where no such admission or renunciation is made, we think the intent is more evidenced by the patent possession than upon any intent ferreted out of an academic discussion of presumed intent. In fact, it came to be recognized that the old rule protected only those with evil intentions. The law said it presumed that an intrusion by

mistake or ignorance was coupled with a "good intent," that is, to hold subserviently to the true owner, and never ripened into title, but, if the intruder was evilly disposed and testified to an "evil intent," that is to hold adversely and in disregard of the rights of the true owner, such an occupancy ripened into title by prescription.

It is clearly pointed out in French v. Pearce, supra, the search for the so-called intent usually degenerates into a search for motives, and that one is legal and the other moral, and the latter ought not to be considered. In pursuing the analysis further, the conclusion was reached that one who extended his boundaries through ignorance or mistake probably did not have a clearly defined conscious intent to hold adversely or hostilely, since it never occurs to him that he is holding anything other than his own. We quote:

"I agree with the learned court, that the intention of the possessor to claim adversely is an essential ingredient. But the person who enters on land believing and claiming it to be his own does thus enter and possess. The very nature of the act is an assertion of his own title and the denial of the title of all others. It matters not that the possessor was mistaken, and had he been better informed would not have entered on the land. This bears on another subject—the moral nature of the action; but it does not point to the inquiry of adverse possession. Of what consequence is it to the person disseised that the disseisor is an honest man? His property is held by another, under a claim of right, and he is subjected to the same privation as if the entry were made with full knowledge of its being unjustifiable."

Further, it is pointed out that the rule that encroachment on a portion of another's land through mistake or ignorance could not ripen into title by prescription was a new thing and applicable only to boundary disputes. Whereas, if a person entered upon a large parcel through mistake or ignorance and occupied it, title by prescription ripened. No rational reason has been advanced for this asserted difference.

In view of our statute and the authorities cited, we are of the opinion that if an adjoining owner erects a building on his property that encroaches upon the land of another, through ignorance or mistake as to the boundary between the tracts of land, and maintains his building thus for 15 years or more without opposition from the true owner, a title by prescription is conferred upon him to that land encroached upon that is good as against the former owner. Every essential of title by occupancy or adverse possession is present in this case.

There are expressions in our decision in Martin v. Cox, 31 Okla. 543, 122 P. 511, that are contrary to the views herein expressed, and such expressions are not essential to a determination of that case, and they are expressly renounced.

As observed heretofore, the defendants claimed title to the property under the garage, but the judgment uses the term easement and purports to confirm a perpetual easement. We think title by prescription, when claimed and shown as herein, if full title, a fee-simple title, and should be so adjudged.

The judgment of the trial court in favor of defendants is affirmed upon the grounds herein stated, but said judgment is modified and corrected as indicated in the preceding paragraph.

WELCH, RILEY, GIBSON, HURST, and DANNER, JJ., concur. CORN, J., concurs in result. OSBORN and DAVISON, JJ., absent.