MYERS et ux. v. OKLAHOMA CITY FEDERAL SAV. & L. ASS'N et al.

No. 32256. Oct. 1, 1946.

Rehearing Denied Nov. 12, 1946.

Second Petition for Rehearing Denied Dec. 3, 1946.

*174 P. 2d 371.*

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for plaintiffs in error.

Kavanaugh Bush, G. Ellis Gable, and Chas. P. Gotwals, Jr., all of Tulsa, for defendants in error, Oklahoma City Federal Savings & Loan Association, Charles L. Deckard, and Beatrice Deckard.

RILEY, J. This is an action involving the title to a strip of land along the east side of lot 12, block 1, Terwilleger Heights Addition to the City of Tulsa. Plaintiff in error, W. S. Myers, claims title by prescription to an irregularly shaped strip on the east side of lot 12.

On March 9, 1928, A. O. Olson purchased lot 13, which adjoins lot 12 on the east, and on October 28, 1936, conveyed the lot by warranty deed to plaintiff in error. The line between the lots runs from the north slightly to the west of south. Three years before Olson acquired lot 13, the then owner constructed a garage, the west wall of which extends over upon lot 12 about 9 inches at a point about 5.35 feet south of the north end of the lots. The east wall of the garage extends from that point south 3.2 feet, where it crosses the line between the lots 3.3 feet south of the northwest corner of the garage so that the garage proper covers a triangular space on lot 12 about 9 inches on the north side, 3.2 feet on the west side, and 3.3 feet on the east side of the triangle. The eaves of the garage extend 2.5 feet beyond the walls, both on the west and north of the garage, so as to cover a space on lot 12.

On June 20, 1941, the Oklahoma City Federal Savings & Loan Association, one of the defendants in error, by warranty deed, conveyed lot 12 to Hugh M. and Laura Lester Russell, and on March 2, 1942, Hugh M. and Laura Lester Russell, by warranty deed, conveyed lot 12 to Charles L. Deckard, another of the defendants in error.

Deckard's survey of the line between

the lots disclosed the location of the garage as stated, resulting in a controversy between Deckard and Myers. Myers claimed that part of lot 12 covered by the garage including that part over which the eaves of the garage extended. On May 20, 1943, the Savings & Loan Association, as mortgagee of lot 12 and as warrantor under the deed to the Russells, commenced this action against W. S. Myers and Grace V. Myers, husband and wife, to quiet title to lot 12.

Charles L. Deckard and Beatrice Deckard, his wife, intervened, alleging their ownership of lot 12 and praying their title be quieted as against Myers. Myers and wife answered alleging their ownership of lot 13 and claiming that part of lot 12 covered by the garage, including that part under the eaves, basing their ownership thereof upon title by prescription.

Trial resulted in a decree quieting title in Myers and wife to all that part of lot 12 actually covered by the garage and denying title to that part of lot 12 lying under the eaves of the garage, but awarding Myers a perpetual easement over the space covered by the eaves, for the maintenance of the eaves only.

Myers and wife appeal from that part of the judgment and decree which denies them title in fee to that part of lot 12 which lies under the eaves of the garage and not covered by any part of the garage proper. Seven assignments of alleged error are presented under one proposition to the effect that W. S. and Grace V. Myers and A. O. Olson had occupied the strip of ground in controversy openly, peaceably, and exclusively under claim of title for a period of more than 15 years next preceding the filing of the petition in this section and thereby acquired title by prescription.

There is no conflict in the evidence showing that at the time Olson acquired title to lot 13 and for three years prior thereto the garage had been constructed and remained as constructed until shortly before this action was commenced on May 20, 1943. Olson acquired his title March 19, 1928 from R. A. Blackburn. There is no showing that either Olson or plaintiffs in error ever claimed color of title as to that part of lot 12 covered by the garage and the extended eaves.

In Johnson v. Whelan et al., 186 Okla. 511, 98 P. 2d 1103, in reference to land claimed by occupancy outside the limits of the land described in the deed, it is said that occupancy is referable to the fact of possession and hostile claim and not to claimant's paper title; any rights which may exist outside of the paper title have no connection with colorable title. These are governed as to the duration of possession and in other respects by the rules applicable to a holding without color of title.

"Moreover, it requires a very distinct and positive occupancy beyond the limits of the deed before the possession will be deemed to extend further, since its existence serves to throw adjacent proprietors off guard as to the character and circumstances of an intrusion on their possession." Id.

The rule is that rights gained by prescription are always confined to the right as exercised for the full period required by the statute. Hall v. Taylor, 57 Idaho, 662, 67 P. 2d 901; Ward v. City of Monrovia (Cal.) 100 P. 2d 836; Robins v. Roberts, 80 Utah, 400, 15 P. 2d 340; Ferguson v. Standley, 89 Mont. 487, 300 P. 245; Boynton v. Longley, 19 Nev. 69, 6 P. 437. In the latter case it was also held that "The extent of the enjoyment measures the extent of the right".

Therefore, any claim of title by prescription based upon a mere projection of the eaves of the garage over a part of lot 12, though it did extend over a period of 15 years, is limited to the right exercised and enjoyed. No right was acquired, other than an easement, as to the eaves, and this gives no title to the land under the eaves.

However, plaintiff in error contends that he and his predecessor in title occupied and used the strip in controversy continuously for a period of 15 years as a walkway to and from their garbage disposal maintained on the rear of lot 12. There is no evidence that this strip was enclosed so as to exclude the owner of lot 12. As to this claim, the evidence is in conflict. Plaintiff in error and Olson testified that they used the strip as a passage to the rear of their lot. Defendant in error Deckard testified that after he acquired lot 12 and until the controversy, the walkway was not so used by plaintiff in error; that it appeared that a walkway had not been so used; there was no path along the strip as testified by plaintiff in error.

Defendant in error introduced in evidence a photograph of the premises which corroborates his claim. The trial judge viewed the premises.

The mere overhanging of the eaves of the garage did not amount to an enclosure. Entry by the projecting eaves was limited to the occupancy only of that part of the space. The construction of the garage with extended eaves was not a distinct and positive entry or possession of any part of the lot other than the space above the ground.

Under the testimony of plaintiff in error and that of Olson, the most that could have been acquired was an easement and not the fee.

Defendants in error contend that a grantee may not tack possession of his predecessor to land not included in the deed under which he claims. Authorities tend to support this contention, but under the evidence plaintiffs in error have failed to establish title by prescription to the land lying under the eaves. The judgment of the trial court is not contrary to the weight of the evidence.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, and DAVISON, JJ., concur.