Jessie **LEACH**, Appellant,

v.

Allen D. **WEST** and Leo A. West, Appellees.

No. 44162.

Supreme Court of Oklahoma.

Dec. 26, 1972.

H. Tom Knight, Jr., Claremore, for appellant.

Gable, Gotwals, Hays, Rubin & Fox by Charles P. Gotwals, Jr., Tulsa, for appellees.

IRWIN, Justice.

This quiet title action involves the ownership of a small tract of land described as "all that part of the West Half of the Southwest Quarter of the Northwest Quarter of Sec. 17, * * *, lying South and East of Bird Creek."

Appellant commenced the action and in her petition alleged that she had acquired title to the tract by adverse possession; and also alleged that she acquired title by prescription because the parties and their predecessors in title had mutually recognized the center of Bird Creek as the true boundary line for the required statutory period.

Appellees were the record owners of the tract in dispute. They filed an answer denying appellant had any interest in the tract and also filed a cross-petition in which they sought to quiet their title.

The following is a plat of the West Half of the Northwest Quarter of Section 17, and it depicts the record ownership; the small tract in dispute; the manner in which Bird Creek traverses the West Half

of the Northwest Quarter; and the fence that crosses the tract.

Property acquired by appellees in 1962

Property owned by appellant

Tract in dispute

Fence line

[A6923]

The trial court sustained appellees' demurrer to appellant's evidence covering the property north and west of the fence (between the fence and Bird Creek), but overruled appellees' demurrer covering the property south and east of the fence. Thereupon, appellees introduced their evidence and the trial court rendered judgment in favor of appellees quieting their title to all the tract in dispute. Appellant appealed from the order overruling her motion for a new trial.

Appellant alleged in her petition that she was the record owner of "all that part of the SE/4 of NW/4 of NW/4 and the E/2 of SW/4 of NW/4 of Sec. 17, * * *." It is to be noted that a part of this described property lies north and west of Bird Creek. However, the record does not disclose that appellant owned any land north and west of Bird Creek, and she sought to quiet her title only to the property lying south and east of Bird Creek in the W/2 SW/4 NW/4 of Sec. 17. Appellees' deeds disclose that they are the record owners of the tract in dispute and the re-

mainder of the property in the W/2 NW/4 of Sec. 17, lying north and west of Bird Creek. Appellees' title was acquired July 31, 1962. We do not herein consider or determine the ownership of any property other than ownership of the tract in dispute.

Appellant testified that she and her husband purchased their property in 1946 and moved on the property in January, 1947; her husband died and she sold her cattle in 1965 and moved from the property in 1966; they made minor repairs to the fence when they moved on their property; they used the property south and east of the fence; and their cattle ran between the fence and Bird Creek.

Appellant also testified that every time Bird Creek overflowed they made minor repairs to the fence. Bird Creek is located in a wooded area and appellant testified that she and her husband cleared some of their land and Appellees' predecessor in title, at the time he owned the land north and west of Bird Creek, helped clear some land for them and they paid him for it. A $400.00 check was introduced into evidence to substantiate this testimony. It appears that the land lying south and east of the fence has been cleared and is cultivated land.

Appellant further testified that after her husband died, she agreed to sell her land and the question of title was presented. She paid fifteen years of back taxes on the property in dispute and appellees do not suggest that there had ever been any taxes paid on the property in dispute prior to that time. Appellant testified she occupied and claimed ownership to all the property lying south and east of Bird Creek and she had always thought "we bought that from the middle of Bird Creek southeast."

Appellant's son testified that after his parents purchased their property in 1946, they ran their cattle up and down Bird Creek and cleared some timber; that the owner of land north and west of Bird Creek helped clear some land for his parents; and that during the time his parents

owned their property, that no one else ever had possession of the land lying south and east of Bird Creek; and nobody, including appellees, ever attempted to take possession or asserted any interest in it.

Appellant introduced the testimony of other witnesses who testified substantially as follows: they had been familiar with the land in the area for years, even when the land was owned by the predecessors of both parties, and they had never observed any of the owners of the land north and west of Bird Creek using the land in controversy; that appellant's predecessors in title, whose ownership went back to the mid 1920's, had always used and exercised control over the land; and that appellant and her husband had used the land and exercised control over it since they had acquired their property.

Appellee Allen West was the only witness called by appellees. His title was acquired in July, 1962. His testimony is as follows:

"Q. Approximately how often have you been on that property since you acquired title to it?

"A. Well, I made it a point to go once a year.

"Q. And what is the nature of the fence line which bisects this particular Triangle piece of property?

"A. It is an old hog wire fence of indeterminate age, it lies immediately east of the timber, the timbered area on what you would class as the high bank of Bird Creek.

"Q. What is in what I have referred to as the improved area, but I believe they call it the cultivated area, or this lighter area which lies to the south and east of the fence, what is in there at the present time?

"A. Well, at the present time I don't believe there is anything in there except cultivated land, I don't believe it has been planted but it is, the last time I was over there it has been plowed and disced.

"Q. Since 1962 has it been substantially cultivated and disced?

"A. Yes, sir.

"Q. Now, did you ever talk to Mr. or Mrs. Leach about their use of that particular tract of land which lies across Bird Creek there?

"* * *.

"A. No."

Appellee West also testified that he acquired his title from Taylor Bryan Smith and Pep Feed and Seed Company. Appellees introduced into evidence a Conservation Plan Map prepared in 1960, wherein T. Bryan Smith was listed as the owner. This Conservation Plan Map did not cover the tract in dispute but did cover 980 acres of land north and west of Bird Creek, which included all the lands owned by appellees in the W/2 of the NW/4 of Sec. 17, lying north and west of Bird Creek.

By order of this Court appellees were "specifically requested to point out any evidence in the record tending to establish that appellees and/or their predecessors in title ever had possession of the property in litigation or ever exercised any control over the property." Appellees filed a response to this order but failed to point out any evidence that tended to establish they and/or their predecessors in title ever had possession of the property or ever exercised any control over the property.

Appellees only claim to the tract in dispute is based on the fact that they and their predecessors in title were the record owners and that record title was never in appellant nor her predecessors in title. Appellant claims ownership of the property upon the theory of adverse possession and that she, under claim of right, held the property openly, visibly, continuously and exclusively for more than fifteen years; that appellant and appellees and their predecessors in title recognized that Bird Creek was the boundary line and acquiesced in it being the boundary line for more than fifteen years; and that she acquired the property by prescription.

In Comstock v. Little (1961), Okl., 359 P.2d 704, we held:

"Where adjoining landowners occupy their respective premises up to a certain fence line, not erected by them or either of them but which has been mutually recognized and acquiesced in for a long period of time, they are precluded from claiming that the boundary line thus recognized and acquiesced in by their predecessors in title, is not the true line. The length of time of such recognition, acquiescence and occupancy is 15 years as required by 12 O.S.1951 § 93, to acquire title by prescription."

In Walthers v. Tanner (1951), 204 Okl. 598, 233 P.2d 303, we held that when a person builds a fence on what he thinks is the boundary line between his and his neighbor's land and cultivates the land enclosed by the fence and occupies the land actually, openly, notoriously and exclusively, and hostilely for fifteen years, the fence will be adjudged to be the boundary between the properties. In that case we said: "It would have been perfectly apparent to anyone who had walked out on the land and looked at it that Tanner was occupying the premises which he had under fence. Under the rule of Johnson v. Whelan, 186 Okl. 511, 98 P.2d 1103, Tanner was occupying this property under a claim of right. He built his fence where he thought the boundary was; occupied the property as his own; claimed it as his own; . . . and held it out to the world as being his property. It is made clear in Johnson v. Whelan, supra, that the intent with which the adverse possessor occupies the property is immaterial if he occupies it actually, openly, notoriously, exclusively, and hostilely for fifteen years."

In Johnson v. Whelan, supra, we held that where the owner of a town lot, in ignorance of the true boundary between his lot and the adjoining lot of another, and under the mistaken belief that it is his property, encroaches upon a portion of the adjoining lot and erects a part of a structure thereon, and occupies such portion of said lot and maintains such structure thereon openly, peaceably, and exclusively for more than 15 years, he acquires title to such portion of the adjoining lot by prescription, sufficient against all.

At the time appellees acquired their property in 1962, appellant had used and had been in peaceful possession of all the property lying south and east of Bird Creek for more than fifteen years. There is no evidence tending to establish that appellee's predecessors in title, ever claimed or asserted any interest in this property during that period of time. West testified that he made it a point to go on the disputed tract at least once a year. He did not say for what purpose. He was asked if he ever "talked to Mr. and Mrs. Leach *about their use of that particular tract of land which lies* across Bird Creek", and he said "No". This must have had reference only to that part lying south and east of the fence because prior to his testifying, the trial court had sustained a demurrer to appellant's evidence covering the land between the fence and Bird Creek. However, it is interesting to note that appellee West did not deny that Mr. and Mrs. Leach (appellants) were using the land, he simply said that he had never talked to them about their use of it.

■ If, as in Comstock, supra, adjoining property owners occupy their respective premises up to a certain fence line and mutually recognize and acquiesce in the fence line as the boundary line, we can see no legal or logical reason why adjoining property owners could not mutually recognize and acquiesce in a natural boundary (such as Bird Creek) from being the boundary line. Under the authority of Johnson v. Whelan, supra, the fact that appellant was mistaken as to the true boundary line and was not aware that she was encroaching upon the lands in which record title was in the name of others, does not preclude her from acquiring the disputed tract in question by prescription if, under claim of

right, she occupied and had possession of the tract openly, peaceably, and exclusively for more than 15 years.

Appellees contend that the cases of Comstock and Johnson, supra, are not applicable in the presented case for the reasons that there was no recognition or acquiescence at any time for the statutory period; and no affirmative action by any person ever established a line as being a boundary by past and present landowners.

 The clear weight of the evidence discloses that appellant, under claim of right against the whole world, used and had possession of all the tract in dispute, openly, peaceably and exclusively for more than 15 years. During that period of time no one questioned her use or possession and claimed no right or asserted any interest in the property. Appellant and her husband had used and been in possession of the property more than fifteen years when appellees acquired their title. Even after appellees acquired their title they did not question appellant's use of the land nor assert any ownership therein.

We hold that from the record presented, appellant acquired title by prescription to all the tract in dispute and the trial court erred in rendering judgment for appellees.

However, under the record presented, we may not reverse the judgment and direct judgment in toto in favor of appellant for the following reasons. The trial court sustained appellees' demurrer to appellant's evidence covering the property between the fence and Bird Creek. By sustaining the demurrer as to that property, ownership of that property was not in issue when appellees were called upon to submit their evidence. Under this posture, we must reverse the order of the trial court sustaining appellees' demurrer to appellant's evidence concerning the property between the fence line and Bird Creek and direct that appellant be granted a new trial as to that tract only.

The judgment of the trial court quieting title in appellees to that part of the tract lying south and east of the fence is reversed and the trial court is directed to enter judgment in favor of appellant quieting her title to that tract.

Appellant's contention that the trial court erred in refusing to permit her to amend her pleadings so as to include other lands can not be sustained.

Certiorari granted; Decision of the Court of Appeals reversed; and judgment of the trial court reversed with directions. The trial court is directed to enter judgment for appellant covering the property south and east of the fence and is directed to grant appellant a new trial covering the property between the fence and Bird Creek.

All the Justices concur.