STATE of Oklahoma ex rel. William E. REMY, Appellant,

v.

James R. AGAR, Trustee, et al., Appellees.

No. 48830.

Supreme Court of Oklahoma.

Jan. 18, 1977.

As Corrected Jan. 25, 1977.

———————

Terry Shipley, Noble, for appellant.

Woodall & Woodall, Norman, for appellee John Potts.

Benedum & Benedum and Luttrell, Pendarvis & Rawlinson, Norman, for appellees.

DAVISON, Justice:

This case involves an appeal from the decision of the trial court in a taxpayer's suit brought under the authority of 62 O.S. 1971 § 373.[1]

Appellant, a resident taxpayer of the City of Norman, William E. Remy, brought an action under the provisions of the above statute, seeking recovery and the quieting of title in the name of the City of Norman of certain lands along the northern bank of the South Canadian River, consisting of approximately 160 acres upon which Norman's City Dump was located.

At the trial court, the District Judge to whom the case was tried, entered a judgment for the appellees. Appellant taxpayer appeals from that judgment.

The facts giving rise to the action are as follows. Since 1901, the City of Norman has held title to certain lands along the South Canadian River in Cleveland County, Oklahoma, and has used said land as a dumping ground. At the time the City took title in 1901, the lands were described as original governmental lots, the boundary lines of which were based on the 1873 governmental survey.

Between 1873 and 1967, the South Canadian River has moved to the south, leaving approximately 200 acres of land and river bottom between the south boundary of the original governmental lots and the 1967 center lines of the river. The City of Norman, in 1967, entered into an agreement and cross-conveyance with those who owned the land across the river and with a party who owned land adjacent to the City's land. This agreement was entered into in order to define the property boundaries and settle any boundary disputes between the parties, which enabled an oil company, producing from lands in and about the riverbed, to apportion royalties.

Appellant taxpayer alleges that under the agreement and cross-conveyance, the City deeded away approximately 160 acres, including land upon which the City dump was located, alleging that the City had title to the approximate 160 acres by virtue of accretion and/or by prescription through adverse possession. Then, the appellant taxpayer contends that the agreement and cross-conveyance is void and asks for recision for the following reasons:

1. The City of Norman did not have the power to convey the land in question.

2. The proposed resolution of the City Council authorizing the execution of the agreement was not in fact a legal action taken by the City Council of Norman, for the resolution was passed in noncompliance with City Charter provisions, as the resolution was passed at an unannounced special meeting, and the resolution was never published.

1. 62 O.S.1971 § 373 provides: "Upon the refusal, failure, or neglect of the proper officers of the State or of any county, township, city, town, or school district, after written demand made upon them by ten resident taxpayers of the State or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the State, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the State or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the State or such county, township, city, town, or school district affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this Section, shall be paid to such resident taxpayer as a reward."

3. The agreement was executed under a mutual mistake of facts, as none of the parties to the conveyance realized, at the time of the execution, that the land upon which the City dump stood was the subject of the contract.

4. There was no consideration or grossly inadequate consideration flowing to the City of Norman in exchange for the conveyance.

I

The first issue raised by the appeal is whether or not the City ever acquired title to the approximately 160 acres involved. If the City never acquired title to the land, an action for the recovery of the land in the City's name will not lie.

Although there was evidence introduced to support the proposition that the City acquired title to the land involved through the process of accretion, there was also evidence introduced to support the contention that the changes in the river resulted from avulsion, though the evidence introduced to show the avulsive nature of the change was at best remote. However, whether accretion or avulsion took place is not the decisive issue, for the evidence clearly established that the City obtained title to the land by prescription.

Evidence adduced at trial demonstrated that from 1944 until the signing of the agreement, the bank of the river in the area in question was virtually unchanged. The record further reflects that at least since 1944, the City had occupied and used the entire dump ground up to the riverbank and that the City had exclusive possession of all the land to the river's edge. City employee, Harvey Byford, who for seventeen years, while in the employment of the City of Norman, lived at the dump and managed it, testified to the City's possession and use of the area. The use and possession of the area for more than fifteen years was clearly adverse, open, peaceful, continuous and exclusive.

The appellees argue that title by prescription could not have come about by virtue of adverse possession because the true boundaries to the area were not known to the City. Then, citing Kentucky case law, appellees argue that there is no such thing as title by adverse possession unless the boundaries are known by the contending claimants. The Kentucky cases cited by the appellees, *Newsome v. Sword*, 240 Ky. 806, 43 S.W.2d 33 (1931), *Skaggs v. Skaggs*, 212 Ky. 836, 280 S.W. 150 (1926), and *Small v. Hamlet*, 24 Ky. 238, 68 S.W. 395 (1902), do not support the appellees' contention, nor does Oklahoma case law.

The Oklahoma rule applicable to the fact situations before us was first announced in *Johnson v. Whelan*, 186 Okl. 511, 98 P.2d 1103 (1940). In that action, we held that where an adjoining property owner encroaches on a portion of the adjoining lot and occupies such portion openly, peacefully and exclusively for more than 15 years, he acquires title by prescription. In that case, we pointed out that possession of property was the key, and that the possession could have resulted from a mistake or ignorance or the true boundary without affecting the result. Again, in *Leach v. West*, Okl., 504 P.2d 1233 (1972), we held that under the authority of *Johnson v. Whelan,* supra, the fact that an appellant was mistaken as to the true boundary line and was not aware that she was encroaching upon the land in which record title was in the name of others, did not preclude her from acquiring the disputed tract in question by prescription, if under claim of right, she occupies and has possession of the tract openly, peacefully and exclusively, for more than 15 years. Also see *Wilson v. Moore*, Okl., 335 P.2d 1085 (1959), in which this Court, under the authority of *Johnson v. Whelan,* supra, made a similar ruling.

■ Because the record before us establishes that the City of Norman occupied the dump area in question openly, peacefully and exclusively for more than 15 years, we hold that the City acquired title to that land by prescription, even though the City may have been ignorant of the true boundaries of the property.

## II

Having held that the City obtained title to the land in question by prescription, we will now determine whether the City had the power to convey that land.

Appellees contend that the City of Norman had the authority to convey the land by virtue of the provisions of 11 O.S.1971 § 568 which provides:

"All cities governed by the provisions of this Chapter shall be bodies corporate and politic, and shall have the power * * * to sell and convey any real or personal property, owned by the city, * * * to make all contracts and do all other acts in relation to the property and affairs of the city, necessary to the good government of the city, * * *."

Appellees further contend that the power to convey land was granted to the City in Article 1, Section 1 of the Amended Charter of the City of Norman which provides:

"The inhabitants within the boundaries hereinafter defined, and their successors, are hereby created and organized a Municipal Corporation and body politic with perpetual succession under the name 'The City of Norman,' and shall succeed to, own and possess all the property, rights, privileges, franchises, powers and immunities now belonging to the present corporation known as the City of Norman, * * *, and shall have the power * * to make contracts, to take and acquire property by purchase, condemnation or otherwise, and to hold, lease, mortgage, convey or otherwise dispose of any of its property within or without the limits of said city, * * *."

■ Conversely, appellant taxpayer argues that such general grants of authority are not sufficient to enable the City to convey land used in the public trust as a public utility, arguing that the dump ground constituted a utility under Oklahoma law. In order to decide the issue before us, it is not necessary to determine whether the City dump constituted a utility, for under the general rule, which we cited with approval in *Board of County Com'rs v. Mullins,* 202 Okl. 628, 217 P.2d 835 (1950), a municipal property held in a governmental capacity, that is for public use, cannot be sold without special legislative authority unless the public use has been abandoned or the property has become unsuited for continued use. McQuillin's Treatise on Municipal Corporations discusses this principle in depth. Section 28.38, 10 McQuillin Municipal Corporations (3rd Edition) states:

"A municipal corporation cannot sell or dispose of property devoted to a public governmental use or purpose, as already has been observed, without special statutory or charter authority, since as to governmental functions the municipality is a mere agent of the state and subject to control by the state legislative authorities. For instance, property may not be sold where it has been acquired or dedicated for public use as a common, or as a park, or for school use, or for other public governmental uses."

This Court in *City Nat. Bank v. Incorporated Town of Kiowa,* 104 Okl. 161, 230 P. 894, 897 (1924), recognized the principle that a municipal corporation holds property in two distinct capacities. In discussing that principle, we stated:

"There is a clear distinction, recognized by practically all authorities, between property purchased and held by municipal corporations for the use of the corporation as an entity, and that purchased and held by such corporation for the public use and benefit of its citizens. In other words, its title to and power of disposition of property acquired for strictly corporate uses and purposes are different from its title to and power of disposition of property acquired for and actually dedicated to the public use of its inhabitants. As to the former class the power of the corporation to dispose of it is unquestioned. The rule is different as to the latter class. It is only when the public use has been abandoned, or the property has become unsuitable or inadequate for the purpose to which it was dedicated, that a power of disposition is recognized in the corporation."

■ We think it clear that the dump involved in this litigation clearly falls into the second class of property. Although the above quoted Charter provision and statutory provision granted the City of Norman the power to dispose of property held for the use of the corporation as an entity, we hold that such power does not enable the City to dispose of land held for the public use and benefit of its citizens, such as dump lands in question. See *Lindauer v. Hill*, 262 P.2d 697 (Okl.1953) and *Green v. City of Norman*, Okl., 455 P. 2d 58 (1969), in which we held that title to streets created by dedication are held by the municipality in trust for the public and not in a proprietary capacity and that the municipality is without power to alienate such title.

No evidence adduced at trial established that the dump lands were abandoned or unfit for continued use. On the contrary, the evidence showed that after the execution of the agreement and cross-conveyances, the City continued to use the dump for approximately a year; then, when requested to vacate the dump, the City continued to use the dump under a lease agreement with the new "owner."

■ The evidence before the trial court clearly established that the property was acquired and devoted to the function of garbage disposal. Although there is some diversity of opinion expressed by various courts, the decided weight of authority is that collection and disposal of garbage by a municipality is a governmental function. See 19 McQuillin Municipal Corporations § 53.46 (3rd Edition). The precise issue of whether the collection and disposal of garbage constituted a governmental function was settled in this jurisdiction, *Oklahoma City v. Baldwin,* 133 Okl. 289, 272 P. 453 (1928), in which this Court stated in its second syllabus:

> "In the collection and disposition of garbage, a city acts for the public health, and discharges a governmental function."

For more recent cases in which the same holding is reached, see *Schuster v. City of Clinton*, Okl., 262 P.2d 157 (1953) and *City*

*of Purcell v. Hubbard*, Okl., 401 P.2d 488 (1965).

■ Both the *Lindauer* case, supra, and the *Green* case, supra, demonstrate that although a municipal corporation may have a general power to dispose and alienate property held by it, that power is a limited one, which does not enable municipal corporations to alienate property dedicated to the municipality in trust for the public. In both cases, the property being used in a governmental capacity was dedicated to public use. We would point out however, that it is not necessary for land to be dedicated in order for it to be devoted and used in a governmental capacity. Although the record before us is silent on whether the dump lands were dedicated, the record clearly showed that the land was acquired for and used in a governmental capacity. Because of its acquisition for and use in a governmental capacity, the City did not have the power to alienate the dump lands. We hold this to be so regardless of whether a dedication of the land took place, for the use in a governmental capacity removed the property from the municipal corporation's general power to dispose of property.

■ Because the land in question was acquired for and devoted to a governmental function which served the public interest, and because there is no specific statutory provision authorizing the City to convey or otherwise dispose of property held in such a capacity, we hold that the City was not authorized to enter into the agreement and cross-conveyance as described above. Since the City was without authority to enter into the agreement and cross-conveyance, the agreement and cross-conveyance constitute an "unauthorized contract" as used in 62 O.S.1971 § 373, entitling the citizen taxpayer to relief under that statute.

### III

Lastly, appellees contend that even if appellant would have been entitled to relief under 62 O.S.1971 § 373, that any action under that statute is barred by the statute of limitations set forth at 12 O.S.1971 § 95 which provided that actions for a penalty or

forfeiture which are based upon a statute, except where the statute imposing the penalty or forfeiture prescribes a different limitation, must be brought within one year. In support of this argument, appellees urge that 62 O.S.1971 § 372 [2] and § 373 must be considered together, and that when so considered, cases holding that actions brought for the recovery of money under § 372, require that any action brought under § 373 be construed as an action for a penalty.

 We do not agree with appellees' contention. All cases cited by appellees in support of their contention were cases in which the return of money was sought, in such cases, a penalty is provided for. However, when all that is prayed for is the return of land which has been transferred, no penalty is provided for, rather the taxpayer bringing the suit receives a reward for his efforts, equal to half the value of the land recovered. In actions for the recovery of land only, no party is required to pay a penalty, no double recovery is permitted. Rather, the City, who through the efforts of its taxpayer, has had land returned to it, rewards the taxpayer for his or her efforts by sharing the benefits of the taxpayer's efforts with the taxpayer, in the form of a reward. Accordingly, we hold that the taxpayer's action was not barred by the statute of limitations dealing with suit brought for penalties.

In so holding, we note that the provisions of § 95 itself excludes application of that statute in cases for the recovery of property, for the introductory language of that section reads:

"Civil actions *other than for the recovery of real property*, can only be brought within the following periods, * * *." [Emphasis added]

Rather, we deem the appropriate statute of limitations to be that provided at 12 O.S.1971 § 93, which would allow the bringing of the action within 15 years.

The decision of the trial court is reversed and the case is remanded to the trial court to evaluate the property returned to the City and to take other appropriate action not inconsistent with the above opinion.

REVERSED AND REMANDED.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

2. 62 O.S.1971 § 372: "Every officer of the State and of any county, township, city, town, or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the State or to such county, township, city, town, or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the State or any such county, township, city, town, or school district, by any officer thereof, and every person having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the State, county, township, city, town, or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the State or such county, township, city, town, or school district, or of any resident taxpayer thereof, as hereinafter provided."